Fred B. IVEY, Plaintiff,

v.

Donald B. RICE, Secretary, Department of the Air Force, Defendant.

No. C2–89–053.

United States District Court, S.D. Ohio, E.D.

March 22, 1991.

Peter F.J. Beagle and Elizabeth J. Baker, Columbus, Ohio, for plaintiff.

Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, and Lt. Colonel William S. Colwell, U.S. Air Force Office of the Judge Advocate General, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

GRAHAM, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is an employment discrimination action brought under the federal employee provisions of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 633a. On January 18, 1989, plaintiff Fred B. Ivey filed a complaint against James F. McGovern, then Acting Secretary of the Department of the Air Force, Lieutenant Colonel Paul R. Isaacs and Jack A. Yeager. The current Secretary, Donald B. Rice, has been substituted as the appropriate agency head in this action. Plaintiff's complaint also asserted a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. However, in an order filed on November 9, 1989, the defendants' motion to dismiss the Title VII claim was granted, and defendants Isaacs and Yeager were dismissed as parties. A trial to the court was held on plaintiff's claim under § 633a on August 22, 1990, September 27, 1990 and December 11, 1990.

## TIMELINESS OF PLAINTIFF'S ACTION

The threshold issue before the court, raised by defendant's motion to dismiss for failure to exhaust administrative remedies or to comply with § 633a and by defendant's motion in limine, is whether plaintiff's action is properly before the court. In the order of November 9, 1989, this court denied defendant's motion to dismiss or for summary judgment on the § 633a claims on the basis that facts bearing upon the issue of exhaustion of administrative remedies were in dispute, thereby precluding summary judgment. On July 19, 1990, defendant filed a motion in limine seeking to preclude plaintiff from proceeding as to any incident of nonselection beyond the two positions which were the subject of administrative investigation. Defendant argued that plaintiff had failed to exhaust administrative remedies or to comply with the notice provisions of § 633a(d). Defendant further asserted that no claim had been made in plaintiff's complaint concerning a failure to hire him for the position of aircraft engine mechanic (WG-8602) and that defendant would be prejudiced due to the unavailability of witnesses if these claims were entertained. Since the circumstances behind plaintiff's pursuit of administrative remedies and the exact nature of plaintiff's claims were not clear at that point, the

court reserved ruling on the motion in limine, and in the interest of judicial economy decided to hear the evidence bearing upon the merits of the case as well as the procedural arguments.

The court has now heard testimony and reviewed the documentary evidence bearing upon the procedural history of the case, and finds the circumstances to be as follows:

In late August, 1985, plaintiff filed a Form 171 application for employment at Rickenbacker Air National Guard Base ("Rickenbacker"). Plaintiff sought employment as an aircraft mechanic. He was rated qualified for the positions of Aircraft Mechanic, Wage Grade (WG)8852–8 with potential to WG–8852–10, and Aircraft Engine Mechanic, WG–8602–8 (Piston) and WG–8602–10 (Jet). The parties have identified eight positions which became available between the filing of plaintiff's application in August, 1985 and August, 1986 for which plaintiff was at least minimally qualified. Plaintiff was not selected for any of those positions, which were awarded to persons under forty years of age.

On or about September 3, 1985, plaintiff was nonselected for two positions of Aircraft Mechanic, WG–8852–10, which were awarded to Timothy J. Locke and Dale C. Iles. Plaintiff was notified of his nonselection for both those positions by letter dated September 11, 1985. On or about October 7, 1985, a position of Aircraft Engine Mechanic, WG–8602–10, was given to Andrew W. Van Ert. Plaintiff's application was not referred for consideration for this position, and he received no nonselection letter. On or about November 22, 1985, plaintiff was nonselected for a position of Aircraft Mechanic, WG–8852–08 with potential for WG–8852–10, which was awarded to John E. Dornon. Plaintiff was notified of his nonselection for this position by letter dated December 3, 1985. On or about November 20, 1985, John R. Widmayer was selected for the position of Aircraft Engine Mechanic, WG–8602–8. On or about December 9, 1985, Jerry D. Weller was appointed to fill the position of Aircraft Engine Mechanic which had originally been listed as a

WG–8602–10 position, but was later reduced to a WG–8602–8 position with potential to WG–8602–10. Plaintiff's application was not referred to the selecting officer for these two positions until after the other applicants had been selected, but he considered plaintiff's application anyway, and plaintiff received a nonselection letter dated December 3, 1985 in regard to the WG–8602–8/10 position. On or about June 12, 1986, plaintiff was nonselected for the positions of Aircraft Mechanic, WG–8852–8 with potential to WG–8852–10, awarded to Kevin Canfield, and Aircraft Mechanic, WG–8852–10, awarded to Curtis I. Hall. Plaintiff was notified of his nonselection for these positions by letters dated August 14, 1986.

According to plaintiff, in July of 1986 he was in the building which housed Colonel Isaacs' office and overheard a statement made by Jack Yeager to Colonel Isaacs to the effect that Yeager didn't want plaintiff because he was an old man. For reasons which will be discussed *infra*, the court finds that this statement was not made. On or about August 22, 1986, plaintiff sent a letter to Congressman John Kasich complaining about the hiring practices at Rickenbacker. Age discrimination was not referred to in the letter, and plaintiff attributed the problem to nepotism.

Plaintiff contacted William E. Harrell, the Rickenbacker EEO counselor, on October 14, 1986. Plaintiff testified that he first spoke with Mr. Harrell in August of 1986. At trial, plaintiff could not recall the exact date he first contacted Mr. Harrell, and claimed that Mr. Harrell told him at a second meeting in October that he did not realize plaintiff wanted him to file the first papers he had signed. Mr. Harrell testified that plaintiff first came to file a complaint on October 14, 1986, and his testimony was corroborated by the fact that the initial appointment box was checked on the EEO initial report form signed and dated by plaintiff. (Jt.Ex. XV). Mr. Harrell also stated in the letter of notice of right to file an administrative complaint dated November 5, 1986 (Defendant's Ex. F) that "21 calendar days have passed since you first contacted me." Mr. Harrell also denied

that he would have held plaintiff's complaint rather than filing it. The court finds that Mr. Harrell's testimony on the issue of the date of his first contact with plaintiff is credible, and that October 14, 1986 was the date on which plaintiff first made a complaint to Mr. Harrell. The letter of notice of final interview dated November 20, 1986, was received by plaintiff on November 22, 1986.

On December 7, 1986, plaintiff filed a formal discrimination complaint. In this complaint, plaintiff alleged that he had "been discriminated against because of my age in that I have not been selected as an aircraft mechanic" and that management "is selecting younger candidates constantly, who are less qualified." On December 9, 1986, Mr. Harrell issued his EEO Counselor's Final Report. Mr. Harrell discovered that there were nine vacancies over the previous year for which plaintiff was not selected. Plaintiff testified that he was informed of this fact about a week after he first contacted Mr. Harrell. Plaintiff also testified that he had met people who received these jobs and that they were under forty. Mr. Harrell recommended that the case be assigned to an investigator because the complaint did not meet the criteria for rejection found in the applicable Air Force regulations.

Plaintiff's complaint was referred to the Air Force Civilian Appellate Review Agency for further proceedings. The administrative investigation was confined to the two June 12, 1986 nonselections. Issues raised by plaintiff's rejection for two WG–8852–10 positions on September 11, 1985 and one WG–8602–08/10 were rejected as untimely on August 5, 1987. The parties met with the investigator, Gertrude K. Johnson, on January 14–15, 1988. On January 14, 1988, plaintiff provided an affidavit in which he claimed that there were nine vacancies between July, 1985 and June, 1986 for which he was not selected. By letter dated May 20, 1988, plaintiff was informed of a meeting with management designee William D. Bringardner for the purpose of attempting an informal resolution of the complaint. The letter and a copy of the investigative file, which includ-

ed Mr. Harrell's file and the exhibits gathered by Ms. Johnson, were received by plaintiff on May 24, 1988. Plaintiff was advised of the proposed denial of his discrimination complaint by letter dated June 18, 1988. This letter also advised plaintiff of his right to request an additional hearing within fifteen days, to file an appeal from the final decision with the Equal Employment Opportunity Commission ("EEOC") Office of Review and Appeals within twenty days, or to file a civil action within thirty days of receipt of the final decision. The final Air Force decision dated July 27, 1988 was delivered to plaintiff on July 29, 1988. This notice also advised plaintiff of his right to appeal to the EEOC within twenty days, or to file a civil action within thirty days. On July 11, 1988, plaintiff spoke with Ms. Grey in Mr. Harrell's office and informed her that he had retained counsel and was taking his case to court rather than proceeding further with the administrative process.

A few months later, on September 13, 1988 according to the administrative record, plaintiff contacted Mr. Harrell by telephone and asked how his case was proceeding. Mr. Harrell informed him that the case file was closed, at which time plaintiff made statements threatening to shoot Colonel Isaacs. Plaintiff testified that he delayed filing a notice of appeal because when he contacted Mr. Harrell about filing an appeal, Mr. Harrell said he would send forms for plaintiff to sign, and he thought that Mr. Harrell was going to assist him with the appeal. Mr. Harrell testified that he never told plaintiff he would help him with his appeal, and that he had no contact with plaintiff between the July 27, 1988 final agency decision and plaintiff's phone call a few months later. The court finds Mr. Harrell's testimony on this matter to be credible and accepts his version of the facts.

Plaintiff filed an appeal with the EEOC Office of Review and Appeals on September 19, 1988. On December 19, 1988, the appeal was dismissed as untimely. Plaintiff received this decision on December 22,

1988. The instant action was filed on January 18, 1989.

Informational posters concerning EEO matters and procedures were posted around Rickenbacker, and plaintiff acknowledged seeing such posters at Rickenbacker and/or during the course of his employment at Travis Air Force Base.

The procedures for claims of age discrimination in federal employment are contained in 29 U.S.C. § 633a. Two avenues of relief may be pursued by the ADEA plaintiff. *Langford v. U.S. Army Corps of Engineers*, 839 F.2d 1192 (6th Cir.1988). One option is to file an administrative complaint and to pursue administrative remedies in accordance with the rules and regulations promulgated by the EEOC. 29 U.S.C. § 633a(b). *See* 29 C.F.R. §§ 1613.-501–1613.521. If the employee is dissatisfied with the results of the administrative process, the employee may file a civil action in federal district court.

The regulations contained in 29 C.F.R. § 1613.501 *et seq.* incorporate regulations found in 29 C.F.R. § 1613.213 *et seq.* as the procedure to be followed in § 633a actions. The regulations require that an informal complaint be filed with the EEO counselor within thirty calendar days of the alleged discriminatory act. 29 C.F.R. § 1613.214. A formal complaint must be filed within fifteen days of the receipt of a notice of the right to file a complaint. 29 C.F.R. § 1613.214(a)(ii). Following the filing of a formal complaint, an investigation is conducted, leading to a final agency decision. An appeal from the final agency decision must be filed within twenty calendar days after receipt of the agency's notice of final decision, unless that time period is extended as provided in 29 C.F.R. § 1613.233(c). 29 C.F.R. § 1613.233(a).

The other option available to the alleged victim of age discrimination is to forego the administrative process and to file a civil action in federal district court. 29 U.S.C. § 633a(c). If this course of action is taken, a plaintiff must comply with 29 U.S.C. § 633a(d), which provides:

When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the commission not less than thirty days' notice of an intent to file such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred. Upon receiving a notice of intent to sue, the Commission shall promptly notify all persons named therein as prospective defendants in the action and take any appropriate action to assure the elimination of any unlawful practice.

The above provisions have been the subject of diverse and conflicting interpretations. In regard to administrative relief, there is a split among the circuits as to whether, once a complainant chooses the administrative route, he must exhaust administrative remedies. Several circuits have held that once a plaintiff initiates administrative proceedings, he must exhaust those proceedings before filing a civil action. *See e.g. Wrenn v. Secretary, Department of Veterans Affairs*, 918 F.2d 1073 (2d Cir.1990); *McGinty v. United States Department of Army*, 900 F.2d 1114 (7th Cir.1990); *White v. Frank*, 895 F.2d 243 (5th Cir.1990); *Castro v. United States*, 775 F.2d 399 (1st Cir.1985); *Purtill v. Harris*, 658 F.2d 134 (3d Cir.1981). The Sixth Circuit in *Langford* reached a contrary result, holding that the plaintiff could file a civil action while the administrative proceedings were still pending. *Langford*, 839 F.2d at 1195. The *Langford* holding may now be subject to question, since under the current version of 29 C.F.R. § 1613.513, the filing of a civil action terminates the administrative proceedings, whereas when *Langford* was decided, the administrative proceedings continued even after the filing of a civil action. Further, the Fifth Circuit in *White*, 895 F.2d at 244, disagreed with the Sixth Circuit's interpretation of *Paterson v. Weinberger*, 644 F.2d 521 (5th Cir.1981), upon which the Sixth Circuit relied in *Langford*. *See also White v. Frank*, 718 F.Supp. 592, 597 (W.D.Tex. 1989), *aff'd*, 895 F.2d 243 (5th Cir.1990).

Since plaintiff did not file suit until after the conclusion of administrative proceedings, this case is not directly analogous to the situation in *Langford,* where the plaintiff filed suit prior to the rendering of a final agency decision. The court in *Langford* was not required to decide what effect the failure to comply with administrative time limits would have on a subsequent civil action. One interpretation of *Langford* would be that noncompliance with administrative procedures would not bar a subsequent civil action, in light of the language in *Langford* that exhaustion of administrative remedies is not required. However, if no sanction may be imposed for failure to comply with the administrative regulations, they would be rendered meaningless, thereby frustrating the goals of the administrative process. The unreasonableness of such a result indicates that the *Langford* holding should be confined to the circumstances in that case.

Other courts have taken the view that once an ADEA plaintiff opts to pursue the administrative route, the administrative channels must be properly exhausted. Thus in *White,* 718 F.Supp. at 596, where plaintiff filed a civil action prior to the conclusion of the administrative process, the court dismissed his ADEA claims for failure to exhaust administrative remedies even though a final decision on plaintiff's administrative appeal was rendered after the filing of the civil action. In *McGinty,* 900 F.2d at 1117, the Seventh Circuit affirmed the dismissal of one of plaintiff's ADEA claims on the basis that she failed to comply with the twenty-day time limit in 29 C.F.R. § 1613.233 for filing an appeal of the agency decision. The court also affirmed the dismissal of another claim which was the subject of a civil complaint filed after the agency decision and the expiration of the twenty-day appeal period but prior to her administrative appeal. *Id.* at 1116. The plaintiff's ADEA claim in *McKinney v. Dole,* 765 F.2d 1129 (D.C.Cir. 1985) was dismissed due to plaintiff's failure to file her administrative complaint within thirty days of the allegedly discriminatory act as required by 29 C.F.R. § 1613.214(a)(i).

■ Courts have reached different results on the issue of whether the failure to comply with administrative time limits raises a jurisdictional bar or whether the time limits are in the nature of statutes of limitations. For example, in *Kontos v. United States Dept. of Labor,* 826 F.2d 573 (7th Cir.1987), the thirty-day limit for filing an administrative complaint was held to be jurisdictional. *See also, Wilkins v. Walters,* 571 F.Supp. 474 (N.D.Ohio 1983). However, subsequent decisions have analyzed the failure to meet an administrative deadline under both the jurisdictional and equitable tolling theories. *See e.g. McGinty,* 900 F.2d at 1118. The Supreme Court's recent decision in *Irwin v. Veterans Administration,* —— U.S. ——, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) applying equitable tolling principles to Title VII time limits lends support for the position that equitable tolling would apply to federal employee ADEA cases.

■ In the present case, plaintiff was notified of the most recent employment decision on August 14, 1986. Plaintiff failed to file his informal complaint within thirty days of the allegedly discriminatory act as required under 29 C.F.R. § 1613.214. The administrative agency rejected three alleged incidents as being untimely, but agreed to investigate the two hiring decisions of which plaintiff received notice on August 14, 1986. Plaintiff also failed to comply with the twenty-day time limit for filing an appeal with the EEOC set forth in 29 C.F.R. § 1613.233(a).

Plaintiff attempts to excuse his failure to comply with administrative time limits by claiming that he did not have knowledge of the allegedly discriminatory acts. The regulatory time periods in employment discrimination cases begin to run from the time that the complainant knows or reasonably should know that the challenged act has occurred. *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *McWilliams v. Escambia County School Board,* 658 F.2d 326 (5th Cir.1981) (construing Title VII).

Eight hiring decisions were challenged by plaintiff at this trial, although no specific position was identified in his administrative complaints. Plaintiff was notified about six of the decisions, those being the positions awarded to Locke, Iles, Weller, Dornon, Canfield and Hall, by five letters dated September 11, 1985, December 3, 1985 and August 14, 1985. Thus, plaintiff knew or reasonably should have known that these six acts occurred. The investigator for the Air Force Review Agency identified five specific positions. The two positions which were the subject of the August 14, 1986 letters (Canfield and Hall) were accepted for investigation and the positions awarded to Locke, Iles, and Widmayer were rejected as untimely. The positions awarded to Dornon, Van Ert and Weller were not addressed by the administrative agency. The administrative record shows that Mr. Harrell discovered nine positions which were filled during the relevant time period during the course of his investigation. *See e.g.* Admin.Record Ex. III–3. Plaintiff acknowledged at trial that he learned about the nine vacancies about a week after he first contacted Mr. Harrell. This is corroborated by the fact that plaintiff states in his own affidavit signed on January 14, 1988 that there "were nine vacancies occurring from July 1985 to June 1986." (Admin.Record Ex. I–A–1). Thus, plaintiff had knowledge of or reasonably should have known about all of the positions, including the remaining two positions for which he did not receive letters, by October, 1986. Plaintiff made no effort to file an administrative complaint concerning those two charges specifically, and those hiring decisions were not investigated by the agency.

Plaintiff claimed that he did not know that the failure to hire him might be attributable to age discrimination until he heard the alleged statement by Mr. Yeager in. Colonel Isaac's office in July of 1986. The court has found that this statement was never made. However, plaintiff was aware of at least six nonselections on or before August 14, 1986. He indicated that he was aware that younger people were being hired for vacancies. The court concludes that plaintiff had adequate notice of and should reasonably have discovered at least six of the challenged acts on or before August 14, 1986. It is further apparent that by the time plaintiff filed his informal complaint on October 14, 1986, he felt he was the victim of age discrimination. By October, 1986 at the latest, plaintiff was aware of a total of nine positions for which he was not selected. Plaintiff made no effort to file administrative charges specifically identifying these additional positions, nor did he advance any grounds for equitable tolling before the administrative agency.

■■ Plaintiff also claims to be entitled to equitable tolling on the basis that he was misled by Mr. Harrell concerning the filing requirements for an informal complaint and for an appeal. The court has found that Mr. Harrell's testimony on these issues was credible, and that plaintiff was not misled by Mr. Harrell in any way. The court also finds that plaintiff had notice of the administrative filing requirements.

The court concludes that plaintiff has established no basis for applying equitable tolling in this case. The court holds that plaintiff failed to exhaust administrative remedies as to the positions awarded to Locke, Iles, and Widmayer, which were specifically rejected by the administrative agency due to the untimeliness of the complaint. The court further holds that as to the two positions awarded to Canfield and Hall which were considered by the investigator, plaintiff failed to exhaust his administrative remedies when he failed to file a timely appeal. This court would hold that a trial on the merits on those five claims is barred.

■ Arriving at an appropriate resolution on this issue as to the remaining positions (Dornon, Van Ert and Weller) is more difficult in light of the fact that these positions were apparently identified by Mr. Harrell during the informal investigation, yet these positions were not specifically addressed in the formal investigation. Plaintiff identified no specific positions in his complaint, and it has always been plain-

tiff's position that he intended to litigate the failure to hire him for all positions for which he was qualified. If this is the case, then the remaining three positions would be deemed litigated in the administrative proceedings, and they would suffer from the same failure to adhere to administrative time limits as the other positions. However, in light of the fact that these claims were never the subject of the formal investigation by Ms. Johnson, plaintiff should be deemed as having elected to bypass administrative remedies as to those claims.

 The court must also address whether plaintiff's claims are timely under § 633a(d). Some cases have interpreted § 633a(d) as requiring that the plaintiff file a civil action within one hundred and eighty days of the alleged act of discrimination, preceded by at least thirty days notice of intent to sue to the EEOC. *McKinney,* 765 F.2d at 1140; *Ray v. Nimmo,* 704 F.2d 1480 (11th Cir.1983). In *Paterson,* 644 F.2d at 523–524, the court construed § 633a(d) to require that the employee "proceed directly to federal court thirty days after notice of intent to sue has been given to the Commission," said notice having been given within one hundred and eighty days of the alleged discrimination.

Other case have interpreted the statute as requiring that notice of intent to sue must be given to the EEOC within one hundred and eighty days of the alleged discrimination and at least thirty days before suit is filed. *See e.g. Proud v. United States,* 872 F.2d 1066 (D.C.Cir.1989). However, there is disagreement as to how long a plaintiff has to file suit after fulfilling this notice requirement. Some courts have held or suggested that the six-year catch-all statute of limitations for nontort civil claims found in 28 U.S.C. § 2401(a) applies. *See Lubniewski v. Lehman,* 891 F.2d 216 (9th Cir.1989); *Bornholdt v. Brady,* 869 F.2d 57 (2d Cir.1989). In *Lavery v. Marsh,* 918 F.2d 1022 (1st Cir.1990), the court, referring to the analogous Title VII provision in accordance with *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), held that Title VII's thirty-day limitations period in 42 U.S.C. § 2000e–16(c) applies to federal ADEA claims. However, regardless of whether a six-year or thirty-day limitations period is applied, it is clear from the language of § 633a(d) that notice of intent to sue must be given within one hundred and eighty days of the alleged act of discrimination, and at least thirty days prior to filing suit. Where a plaintiff elects to bypass the administrative process in whole or in part, he must comply with the notice requirement of § 633a(d) or face dismissal. *Thorne v. Cavazos,* 744 F.Supp. 348 (D.D.C.1990); *White,* 718 F.Supp. at 596.

The provisions of § 633a(d) apply only where no complaint is filed with the EEOC, thereby bypassing administrative remedies in whole or in part. *Romain v. Shear,* 799 F.2d 1416 (9th Cir.1986); *Paterson,* 644 F.2d at 523–524. The language of § 633a(d) requires notice where "the individual has not filed a complaint concerning age discrimination with the Commission." In *White,* 718 F.Supp. at 596, the court construed this language as meaning that where the plaintiff only exhausts his administrative remedies in part by virtue of not completing the administrative process, the notice requirement is triggered. Applying this reasoning further, notice would be required in regard to any claims which are not the subject of the EEOC complaint, and in regard to claims for which administrative remedies were not exhausted.

In this case, the most recent act of alleged discrimination was brought to plaintiff's attention in August of 1986. Plaintiff's administrative complaint did not specify any particular incident of discrimination, but simply made general allegations of failure to hire him for the position of aircraft mechanic based upon his age. The informal complaint was filed with Rickenbacker's EEO counselor, and the formal complaint was filed with the Air Force Civilian Appellate Review Agency. The investigator referred to five specific positions which were filled during the relevant time period, and two of those positions were accepted for investigation. Plaintiff's appeal from the final agency decision was filed with the EEOC office of Review and

Appeals on September 19, 1988. The appeal was dismissed as untimely.

Plaintiff has conceded that he has never given any formal notice of intent to sue to the EEOC. Plaintiff's administrative complaint was also not filed with the EEOC. The issue presented is whether plaintiff's complaint filed with the Air Force was sufficient to provide notice to the EEOC in regard to any of plaintiff's claims.

In *Lackhouse v. Brady*, 746 F.Supp. 751 (N.D.Ill.1990), the court held that the filing of an administrative complaint with the employing agency did not satisfy the § 633a(d) notice requirement. The court noted that the EEO officer is an agency official, not an EEOC official. *Id.* at 756. The court further found that under the regulations applicable to federal age discrimination claims, the agency, not the EEOC, is responsible for the investigation. *Id.* at 756–757. A like conclusion was reached by the court in *Hinton v. Solomon*, 475 F.Supp. 105 (D.D.C.1979). This court agrees with the reasoning in *Lackhouse* and finds that the filing of plaintiff's administrative complaint did not satisfy the notice requirement. Further, the agency complaint filed by plaintiff did not specifically describe the precise acts of discrimination which plaintiff was raising, and therefore could hardly have constituted sufficient notice of the nature of plaintiff's claims to the EEOC.

Likewise, plaintiff's notice of appeal to the EEOC from the final administrative decision did not constitute a notice of intent to sue under § 633a(d). The EEOC never became involved with the merits of the case, since the appeal was rejected as untimely. Even if the EEOC had looked at the merits, it would have been concerned only with the two positions which were actually investigated. Further, even if the notice of appeal, filed on September 19, 1988, were construed as a notice of intent to sue, it was filed more than one hundred and eighty days from the alleged discriminatory acts, which occurred between September, 1985 and August, 1986, or at the very latest in October of 1986, when plaintiff had knowledge of those acts. *See White*, 718 F.Supp. at 596, n. 3.

The principles of equitable tolling have been applied to the notice requirement of § 633a(d). *See Ray*, 704 F.2d at 1483. Even assuming that equitable tolling may toll the one hundred and eighty-day requirement in appropriate cases, plaintiff has not demonstrated any basis for applying equitable tolling in this case.

This court finds that plaintiff did not exhaust his administrative remedies under § 633a(b), nor did he comply with the notice requirements of § 633a(d) in regard to any of the eight positions. Defendant's motion to dismiss plaintiff's ADEA claims is well taken. However, since the law regarding the § 633a procedural requirements is not well settled in this circuit, the court has decided in the interests of judicial economy to address the merits of the case against the event that plaintiff's claims are later found to have been properly before the court.

 Defendant's motion in limine also seeks to preclude plaintiff from proceeding on the claims concerning the WG–8602 positions. The basis for this motion is the fact that plaintiff's complaint gave defendant no notice that plaintiff was claiming discrimination as to those positions.

Plaintiff alleges in his complaint that there were "nine vacancies for aircraft mechanics" during the relevant time period. (Complaint, Para. 14). Plaintiff alleged that he was "nonselected for each aircraft mechanic position." However, he does not specifically identify any of the positions in his complaint. The only reference to a specific job description occurs in paragraph eleven of the complaint, where plaintiff alleges that Jack Yeager was responsible for filling vacancies for which plaintiff applied "in the career field of 8852 of Aircraft Mechanic." The WG–8602 positions bear the title of "Aircraft Engine Mechanic," which is not mentioned in plaintiff's complaint.

Plaintiff's position is that it was not necessary for him to allege specific acts of discrimination in the complaint, but rather that it was up to the defendant to identify

all positions for which plaintiff was qualified but not selected. This position is simply incompatible with the principles of proper pleading. Plaintiff's complaint in no way notified defendant that plaintiff was also challenging his nonselection for "Aircraft Engine Mechanic" positions. In fact, a motion for a more definite statement would have been well taken in regard to plaintiff's other claims. Plaintiff's complaint as drafted fails to state a claim in regard to the WG–8602 positions.

The question for the court is whether plaintiff at this juncture should be permitted to in effect amend his complaint. Defendant's motion in limine is granted and leave to amend is denied in regard to the WG–8602–10 position awarded to Kevin Updegrove on January 23, 1990. Plaintiff has not shown good cause for why an amendment should be permitted at this late date, nor has he shown that he has complied with the § 633a(d) notice requirement in regard to this claim, and defendant is not prepared to proceed on this claim. As to the other WG–8602 positions, defendant claims that witnesses and evidence have been lost in the interim. The court is inclined to agree with defendant's position. However, the court reserved ruling on the motion at the time it was filed, and the defendant has since presented evidence as to the three WG–8602 positions which arose between August, 1985 and August, 1986. Therefore, the court will proceed to consider the merits of those claims.

The court also reaffirms the denial of plaintiff's objection to the defendant proceeding with evidence on the position awarded to Dornon. The court notes that this position was the subject of a December 3, 1985 notification letter, and Mr. Dornon was listed as a selectee in an interrogatory submitted to Mr. Yeager by Mr. Harrell which was included in the administrative record. (Admin.Record, I–B–4, p. 146; II–4, p. 195). Thus, plaintiff had ample opportunity to discover the existence of this position.

## PLAINTIFF'S CLAIMS

In regard to plaintiff's claims of age discrimination under 29 U.S.C. § 633a, the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. In August, 1985, plaintiff filed a Form 171 application for employment at Rickenbacker Air National Guard Base. On this form, plaintiff was listed as being minimally qualified for the positions of Aircraft Mechanic WG–8852–8/10, and Aircraft Engine Mechanic, WG–8602–8 (Piston) and WG–8602–10 (Jet). At that time, plaintiff was forty-two years of age.

2. Plaintiff indicated that he filed the application because he had been informed by Colonel Paul Isaacs that there would be positions available after July, 1985. Colonel Isaacs did not recall having this discussion with plaintiff, and indicated that he would not have promised plaintiff a job. The court finds that there were vacancies in the WG–8852 and WG–8602 career fields after July, 1985, but that Colonel Isaacs never promised plaintiff that he would be chosen for employment.

3. The Form 171 filed by plaintiff at the Rickenbacker personnel office was as contained in Joint Exhibit I. The court finds that plaintiff filed no additional attachments, such as those contained in Plaintiff's Exhibit 10 or training certificates, with his Rickenbacker application.

4. Between August, 1985 and August, 1986, plaintiff's application was considered in connection with five aircraft mechanic positions and up to two aircraft engine mechanic positions. One additional aircraft engine mechanic position was filled for which plaintiff was not referred for consideration. Plaintiff was not chosen for any of these eight positions, and persons under the age of forty were selected for these positions.

5. On or about August 22, 1986, plaintiff wrote a letter to Congressman John Kasich, complaining about his nonselection. The letter made no reference to age discrimination. Plaintiff claimed that the jobs at Rickenbacker were being awarded to family and friends.

6. On October 14, 1986, plaintiff had his initial interview with the EEO counselor, William Harrell. On that date, he filed an informal complaint alleging age discrimination. Plaintiff claims that he was told by Mr. Harrell that once he filed a complaint, he would not be hired for a position while the complaint was pending. Mr. Harrell denied making this statement, noting that such a policy would constitute illegal reprisal. The court notes that plaintiff has included no claim for reprisal or for alleged acts of discrimination occurring after August, 1986 in his complaint. In any event, the court finds that Mr. Harrell did not make such a statement.

7. Plaintiff's claims in regard to two positions were accepted for investigation by the Air Force Civilian Appellate Review Agency. The investigator found in favor of the defendant. After his untimely appeal was dismissed, plaintiff filed the instant action on January 18, 1989.

8. Two methods of filling job vacancies are employed at Rickenbacker. One source of applicants is known as the applicant supply file. This is a list which is maintained locally at Rickenbacker. Only applicants from within an established commuting area may apply to be placed on this list. The advantage of being on the applicant supply list is that an applicant from that list is not required to serve a probationary period if he has served a probationary period in the course of previous government employment.

9. The other source of applicants is a certified list obtained from the Office of Personnel Management in Macon, Georgia. Applicants from all over the country may register with the Office of Personnel Management. An applicant's name is maintained in the certified pool for a period of one year, or until such time as the applicant is selected for a position, after which a new application must be filed to remain on the list. The Macon, Georgia list potentially offers a broader pool of applicants than might be available locally. The disadvantage to an applicant selected from the certified list is that a one year period of probation is required. Plaintiff had previously submitted an application to Macon, Georgia in 1981, but plaintiff was not registered on the certified list in 1985 and 1986.

10. The selecting official at Rickenbacker has the discretion to request a list of applicants from the applicant supply file, the certified list, or both. The applicable regulations (Jt.Ex. XVII) permit but do not require the selecting official to interview the applicant or his supervisors.

11. On September 3, 1985, plaintiff was nonselected for the position of Aircraft Mechanic, WG–8822–10. The position was given to Timothy J. Locke. The selecting official was George Moyer, a flightline maintenance supervisor who was approximately fifty-three years old at the time. He selected Locke because he was better qualified than plaintiff. Plaintiff was rated as WG–8852–8 with potential to WG–8852–10, whereas Locke had been rated as WG–8852–10 since 1982. An employee ranked as WG–8852–8/10 was like an apprentice, and had to be accompanied on jobs by an employee ranked WG–8852–10, the equivalent of a journeyman. There was a shortage of manpower at the time, and Mr. Moyer felt he could not hire an applicant rated as an apprentice who would tie up the services of another employee.

12. According to Mr. Locke's Form 171, he had been employed at Wright Patterson Air Force Base since July of 1982 as Aircraft Mechanic, WG–8852–10. He had completed several training courses, and was awarded the Air Force Good Conduct Medal in April, 1981. He was licensed as an F.A.A. certified airframe and powerplant mechanic. He explained in detail his experience working on F–4C aircraft, which entailed inspection procedures similar to those involved in the position under consideration. Mr. Locke's Form 171 also described the tools and procedures he was familiar with. Mr. Moyer considered Locke's experience working on F–4C fighters and training other employees, his prior schooling, his F.A.A. license and his qualifications for using tools and making repairs in reaching his decision. Mr. Locke was

also highly recommended as a good employee by his supervisor.

13. Mr. Moyer also selected Dale C. Iles for the position of Aircraft Mechanic, WG–8852–10 on September 3, 1985. Mr. Iles was a crew chief with the higher qualification of wage grade 11–3, who took a downgrading to grade 10 in order to accept the job. The Form 171 for Mr. Iles revealed that he had worked at Wright Patterson since July of 1981, and that he had taken several training courses. Mr. Moyer regarded him as being highly qualified. Mr. Iles had been awarded a good conduct medal and a sustained superior performance award, and had prior schooling, including instruction on hazardous materials. He also had a good safety record in his previous job as a truck driver. Mr. Iles had prior experience with maintaining files and training and supervising subordinates. He was rated as a superior employee, and received a good recommendation from his superiors.

14. Plaintiff's Form 171 (Jt.Ex. I) reveals that he was in the military from 1961 to 1964, and again from 1966 to 1968, during which time he worked on various aircraft. He was employed in several jobs unrelated to aircraft following his release from the service. He was fired from one job as an auto mechanic. From May, 1973 to September, 1976, he worked with helicopter-type aircraft. Plaintiff was employed from June, 1980 to July, 1981 at Travis Air Force Base, working on C–5A aircraft. After leaving Travis, he worked for six months at Rickenbacker inspecting C–123 type aircraft. From February, 1982 to May, 1985 he was employed at Travis as an aircraft mechanic. His application does not specify which type of aircraft he worked on during that period. Plaintiff lists four training courses related to aircraft maintenance, but does not specify the duration of the courses or when he took them. None of the courses are engine schools. The descriptions of his job duties are not detailed. Some of his previous experience dates back to fifteen to twenty years prior to his application at Rickenbacker.

15. Mr. Moyer did not feel that plaintiff was as qualified as Locke and Iles. Many of his prior jobs did not involve aircraft. Plaintiff was only rated as a WG–8852–8 with potential to WG–8852–10, not as a WG–8852–10. Mr. Moyer did not contact plaintiff's supervisors because he did not feel that plaintiff was as qualified as the other applicants. Plaintiff's age was not a factor in his decision not to select plaintiff.

16. On October 7, 1985, Andrew W. Van Ert was selected to fill an Aircraft Engine Mechanic WG–8602–10 position by Sergeant Ervin Roush, a propulsion superintendent. Plaintiff was not among the applicants referred to him. It is likely that Sergeant Roush was working from a certified list, since the lack of a local address and the appointment with a probationary period indicate that Mr. Van Ert was selected from a certified list. Plaintiff was not on the certified list. Mr. Van Ert's Form 171 reveals that he worked from March, 1982 to October, 1985 as a jet aircraft engine mechanic at Travis Air Force Base. The job descriptions provided are very detailed. He completed several training courses, including a 316–hour course for jet engine mechanics in 1982 and two jet engine technician courses and a C–141 Engine Run Course in 1985. He listed four engines with which he was experienced.

17. Sergeant Roush compared plaintiff's application with that of Mr. Van Ert at trial, and concluded that even if plaintiff's application had been referred to him, he would have found Mr. Van Ert to be more qualified. He noted that Van Ert's application was detailed and included engine schools, whereas all of plaintiff's schools were aircraft schools. Sergeant Roush was fifty-two years old when he selected Mr. Van Ert. He had hired several people over forty. He indicated he was hesitant about selecting Mr. Van Ert because he was so young, but that his prior experience was sufficient to overcome these doubts.

18. On November 20, 1985, the position of Aircraft Engine Mechanic, WG–8602–8 was awarded to John R. Widmayer by Sergeant Charles Brown, a aircraft engine

stock foreman. At approximately the same time, Sergeant Brown also selected Jerry D. Weller to fill the position of Aircraft Engine Mechanic, WG–8602–8/10, which had been downgraded from a WG–8602–10 position in order to obtain qualified applicants. Widmayer and Weller were selected from a certified list from Macon, Georgia.

19. After Sergeant Brown had selected these candidates, plaintiff's application was referred to him. He considered the application as a courtesy to the personnel office even though he had already made his selections. It is not clear from his testimony whether he considered plaintiff for both the Weller and Widmayer positions, although the paperwork completed at the time suggests that he did, since he wrote on the rejection slip, DD Form 359, that "other well qualified persons were selected." (Jt.Ex. X). After considering plaintiff's application, Sergeant Brown adhered to his original selection.

20. Sergeant Brown felt that Mr. Weller was more experienced in the type of skills needed for the position. He viewed Mr. Weller's Form 171 as excellent. Mr. Weller had almost four years experience working as a jet engine mechanic while in the service, and he had completed several jet engine training courses, including one course in which he was an honors graduate. He had received the Air Force Achievement Award. Plaintiff's Form 171 reflects no specific courses in engine maintenance. He concluded that Mr. Weller was more qualified than plaintiff. Sergeant Brown contacted Mr. Weller's supervisor and also contacted people to inquire about plaintiff.

21. Sergeant Brown also felt that Mr. Widmayer was more qualified for the position than plaintiff. Mr. Widmayer's Form 171 indicates that he has an associate's degree in applied science in mechanical engineering from Columbus Technical Institute. Sergeant Brown noted that he had worked within the previous year as a turbo prop mechanic as a reservist at Rickenbacker and had attended jet engine schooling.

22. Sergeant Brown was fifty years old when he selected Widmayer and Weller. Age was not a factor in his decision.

23. On November 22, 1985, plaintiff was nonselected for a position of Aircraft Mechanic, WG–8852–8/10, which was awarded to John E. Dornon. On June 12, 1986, plaintiff was nonselected for the position of Aircraft Mechanic, WG–8852–8/10 which was awarded to Kevin Canfield, and for the position of Aircraft Mechanic, WG–8852–10, which was given to Curtis I. Hall. These three positions were filled by Jack Yeager, an aircraft overhaul foreman. Mr. Yeager was forty-five years old in 1986.

24. Mr. Yeager worked with C–130A cargo aircraft, and looked for applicants with previous experience working with these aircraft. Training was required in order to become qualified to work on that type of aircraft.

25. Mr. Dornon's Form 171 includes attachments describing his job experience, including tools with which he is familiar. His employment at the time of the application was with Rockwell International working on the B–1B aircraft, which required reading and applying blueprints. Mr. Yeager thought that Mr. Dornon's application was thorough and well-assembled. He noted that Mr. Dornon had prior experience working on the C–130A aircraft, and was currently working at Rickenbacker in the reserves. Mr. Dornon had experience performing aircraft inspections. He had taken several aircraft maintenance specialist courses, was an honor graduate from one of those courses, and received several citations from the Air Force.

26. Mr. Yeager selected Mr. Hall because he had worked at Rickenbacker since March, 1985 and had four years prior experience with the C–130 aircraft. His Form 171 revealed that he had taken four courses in aircraft maintenance, including three courses relating to the C–130 aircraft. He also had special training as a crash team member. Mr. Hall was an honor graduate who had received a meritorious service award. His description of his job duties and experience with tools was detailed.

27. Mr. Yeager concluded that Mr. Canfield was more qualified for the job due to his previous experience with C–130 aircraft, including four years in the military plus one year in the reserves. He had taken maintenance courses, including training in the C–130. Mr. Yeager contacted Mr. Canfield's supervisor to inquire about his performance. Mr. Yeager also found Mr. Canfield's application to be detailed and specific as to his prior accomplishments, and the experience described was of the type required in the position being filled by Mr. Yeager.

28. Mr. Yeager concluded that plaintiff was less qualified than the other applicants for these three positions. He felt that plaintiff's application was vague and not as detailed. Mr. Yeager could not tell from Part A of the application which type of aircraft plaintiff had worked on. He also noted that plaintiff's application revealed no experience with the C–130 aircraft. Plaintiff had prior experience working with the C–123 aircraft, but those aircraft were no longer in general service. If plaintiff had been hired for these positions, he would have required training, whereas the persons selected already had prior experience and training with the C–130 aircraft. Mr. Yeager attempted to contact plaintiff's supervisors, but was unable to reach them. He also noted that plaintiff had been fired from one job.

29. Mr. Yeager had hired an individual within the past year who was fifty-two years of age. He testified that at one time, he had eight people working under him, half of whom were his age or older. Age was not a factor in Mr. Yeager's decisions.

30. Plaintiff claims that he overheard Mr. Yeager tell Colonel Isaacs that he did not want plaintiff because he was an old man. Colonel Isaacs and Mr. Yeager denied hearing or making such a statement, and the court finds their testimony to be credible. The court notes that no reference to this statement, which was supposedly made in July of 1985, was included in plaintiff's August, 1985 letter to Congressman Kasich. No such statement was referred to throughout the entire administrative process. If a statement of this significance had in fact been made, the court feels that plaintiff would have relayed this information to Mr. Harrell and the EEO investigator. The fact that this information does not appear in any statements signed by plaintiff during the administrative proceedings supports the conclusion that the statement was never made. It is also incredible that Mr. Yeager would have made such a statement in light of the fact that he is older than plaintiff.

CONCLUSIONS OF LAW

1. Age discrimination claims under 29 U.S.C. § 633a are analyzed under the criteria for Title VII discrimination cases developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. *Limongelli v. Postmaster General of United States*, 707 F.2d 368 (9th Cir.1983).

2. The plaintiff bears the burden of proving a *prima facie* case of employment discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In this case, plaintiff must show that 1) he was over forty years of age; 2) that he was not hired for the position sought; 3) that he was qualified for the position; and 4) that the position was given to a person not a member of the protective class. *See Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 313 (6th Cir.1989). Defendant has conceded that plaintiff has established the elements of a *prima facie* case.

3. Where the plaintiff has established a *prima facie* case, defendant bears the burden of articulating some legitimate, nondiscriminatory reason for the plaintiff's rejection. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094.

4. When the defendant has met its burden of production by articulating a legitimate, nondiscriminatory reason for the employment decision, plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The ultimate burden of

proving that the employment decision was the result of discriminatory animus remains with the plaintiff at all times. *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). The plaintiff bears the burden of disproving an employer's assertion that the adverse employment action was based solely on a legitimate neutral consideration. *Id.,* 490 U.S. at 660, 109 S.Ct. at 2126; *Burdine,* 450 U.S. at 256–258, 101 S.Ct. at 1095–96. To meet this standard, plaintiff must produce direct, indirect, or circumstantial evidence that his age was a factor in the decision not to hire him, and that but for his age he would not have been rejected. *Gagne,* 881 F.2d at 314.

5. Defendant has met its burden of coming forward with legitimate, nondiscriminatory reasons for plaintiff's nonselection for each of the eight positions before the court. Defendant has produced the testimony of the selecting officials, who indicated that in their opinion, plaintiff was less qualified for the job than the person who was chosen. In regard to the positions for which plaintiff was considered, but not chosen, the selecting officials indicated why they felt the qualifications and experience of the person selected made that person the best candidate for the job.

6. In the case of the position awarded to Mr. Van Ert, plaintiff's application was not referred for consideration. Debbie Thomas, an employee in the personnel office at Rickenbacker, did not know why plaintiff's application was not referred. However, it is likely that Sergeant Roush was working from a certified list. The documents (Jt.Ex. VIII) indicate that Mr. Van Ert listed a California address on his Form 171, which means he would not have been eligible for the local applicant supply list. He was also placed on probationary status for one year following his appointment. If Sergeant Roush was provided a certified list, plaintiff's name would not have been on it, since plaintiff was not registered at that time in Macon, Georgia. In any event, there is no evidence that the application was deliberately withheld from Sergeant Roush. Sergeant Roush could

not have discriminated against plaintiff in choosing Mr. Van Ert, since he was unaware of plaintiff's application. Further, he indicated that even if he had seen plaintiff's application, he would still have selected Mr. Van Ert as the more qualified candidate.

7. Plaintiff has the burden of proving that defendant's proffered reasons are pretextual, and that the true reason for his nonselection was his age. Plaintiff offered evidence of a statement allegedly made by Mr. Yeager to the effect that he did not want plaintiff because he was an old man. The court has concluded that this testimony is not credible, and that the statement was never made. The court has also found that Mr. Harrell never said that plaintiff would not receive a position as long as his complaint was pending. Thus, the court rejects this evidence, and it does not support plaintiff's claims.

8. Plaintiff also notes the fact that he was not interviewed for any of these positions. The regulations permit but do not require the selecting official to personally interview applicants. In this case, there was no evidence that any of the applicants were interviewed. Testimony was presented that in some cases, a supervisor was contacted, including plaintiff's supervisors, and that in some instances efforts were made to contact plaintiff's supervisors. This does not support plaintiff's theory of discrimination. The fact that plaintiff may have been able to supplement his vague and superficial application if he had been contacted for an interview, thus allegedly improving his chances for selection, does not adversely reflect upon the selecting officials, but rather on the quality of plaintiff's application.

9. The defendant has offered legitimate, nondiscriminatory reasons for plaintiff's nonselection. Plaintiff has not shown that these reasons were pretextual. This court as fact-finder may not focus on the soundness of the employer's business judgment. *Wilkins v. Eaton Corp.,* 790 F.2d 515, 521 (6th Cir.1986).

10. The circumstances indicate that the decisions of the selecting officials were

based upon the qualifications set forth in each candidate's Form 171, and in some cases upon information obtained from supervisors. The officials were able to point out specific, objective factors such as experience and training upon which they relied in concluding that the other candidates were better qualified. They also identified what they perceived to be deficiencies in plaintiff's Form 171. Plaintiff has offered no evidence that the other candidates really didn't have the qualifications specified in their applications, and that the selecting officials were aware of that fact. While plaintiff claimed to have more training or experience than was reflected in his application, he has not shown that he in fact had additional training or qualifications of which the selecting officials were aware, but ignored due to plaintiff's age.

11. Other circumstances also militate against a finding of age discrimination. The selecting officials were older than plaintiff. Two of them, Sergeant Roush and Mr. Yeager, specifically testified that they had hired persons over forty in the past. Plaintiff introduced no statistical evidence to support his claims. The investigator, Ms. Johnson, noted in her Report of Investigation (Admin.Record–I, p. 8) that the average age of the thirty-six aircraft mechanics at the time of the report in 1988 was forty-one, with ages ranging from twenty-five to fifty-seven. An examination of the 1988 lists of aircraft mechanics and aircraft engine mechanics (Admin.Record–I–A–17, pp. 75–77) reveals that there are several individuals on both lists who were forty or over in 1988.

12. Plaintiff's unsupported belief or conjecture that the reason for his nonselection must have been age discrimination is insufficient to establish an inference of age discrimination. *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir.1986).

13. All of the selecting officials testified that age was not a factor in their nonselection of plaintiff. The court finds this testimony to be credible. Plaintiff has introduced no credible direct or circumstantial evidence of a discriminatory motive. Plaintiff has also failed to show that the nondis-

criminatory reasons for plaintiff's nonselection were false or a pretext for age discrimination. Plaintiff has not met his ultimate burden of proving that the reason for his nonselection for the eight positions was his age.

14. The court finds in favor of the defendant and against plaintiff on his claims under 29 U.S.C. § 633a. Plaintiff's Title VII claim and the claims against defendants Isaacs and Yeager having been dismissed previously, the Clerk of Courts is hereby directed to enter judgment in favor of all defendants. Plaintiff will pay costs.