991 F.2d 794
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James A. ANDERSON, Plaintiff-Appellant,
v.
TENNESSEE VALLEY AUTHORITY, Marvin Runyon, John B. Waters,
and William H. Kennoy, Defendants-Appellees.
 No. 92-5811.
 United States Court of Appeals, Sixth Circuit.
 April 13, 1993.
 
 Before KEITH and SILER, Circuit Judges, and WOODS, District Judge.*
 PER CURIAM.
 
 
 1
 This is an employment discrimination and retaliation case. Plaintiff-appellant James A. Anderson filed this lawsuit in the United States District Court for the Eastern District of Tennessee at Chattanooga on May 6, 1991. Mr. Anderson is a black male afflicted with diabetes. He was 41 years old at the time the events underlying his claim occurred. Plaintiff-appellant alleges employment discrimination on the basis of race, age, sex and physical handicap by defendant-appellee Tennessee Valley Authority (TVA) and the individual defendants-appellees, who were members of the Board of Directors of TVA during the relevant time period.[1] Mr. Anderson also alleges retaliation by TVA for certain protected activities in which he engaged. Mr. Anderson's claims arise under 42 U.S.C. § 2000e-16, 29 U.S.C. § 633a and 29 U.S.C. §§ 791 and 794(a).
 
 
 2
 Defendants moved for dismissal and/or summary judgment, asserting a variety of grounds for relief. The motion was referred to a United States Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1). On March 10, 1992, subsequent to full briefing and oral argument, the Magistrate Judge issued his Report and Recommendation, without specifically addressing the plaintiff's Rehabilitation Act claims. On April 20, 1992, the District Court adopted the Report and Recommendation in its entirety and granted defendants' motion for summary judgment. Plaintiff filed the instant appeal. For the reasons stated herein, we AFFIRM.
 
 I.
 
 3
 The facts underlying plaintiff-appellant's complaint are substantially undisputed and are set forth at length in the Magistrate Judge's Report and Recommendation, which is a part of the record in this case. For purposes of this Opinion, the following summary is sufficient.
 
 
 4
 Plaintiff's claims arise out of events that occurred in connection with a reduction in force (RIF) carried out by TVA in mid-1988. Mr. Anderson worked for defendant-appellee TVA in a managerial capacity from November 16, 1983 until September 2, 1988. At the time of his resignation, he was employed as an Equal Opportunity Analyst at an M-3 competitive level with a "permanent-nonveteran" classification.
 
 
 5
 After receiving notification that he would be displaced by the RIF, plaintiff-appellant secured employment as Director of Unemployment Insurance in Tennessee's Department of Employment Security in Nashville. He tendered his resignation to TVA, effective September 2, 1988.[2] One year later, plaintiff-appellant became Director of Special Projects under the Deputy Commissioner of the Department of Employment Security, in Nashville. In September of 1990, plaintiff-appellant returned to Chattanooga as a member of the Commissioner of Employment Security's personal staff.
 
 
 6
 During his sojourn in Nashville, plaintiff-appellant maintained his permanent residence and mailing address in Chattanooga, where his wife and daughter remained. Anderson lived in Nashville during the work week and commuted home to Chattanooga on the week-ends. In 1989, however, Anderson started law school in Nashville, and his week-end commute was less regular during that year.
 
 
 7
 Prior to his separation from TVA, Anderson instituted an administrative class complaint against the TVA, alleging disparate impact race discrimination against black managers as a class in TVA's evaluation system and by operation of TVA's policy of providing "credit for performance" during reductions in force, in violation of Title VII of the Civil Rights Act of 1964. He amended this complaint to add an individual claim of discrimination in March, 1989. The individual complaint was based on the TVA's reemployment of one Lynn Talley, who had been employed by TVA during Anderson's tenure as a "pre-permanent" equal opportunity analyst with a competitive level of M-2. Her position had been eliminated by TVA's 1988 reduction in force. Anderson also filed, on April 10, 1989, a formal complaint regarding Talley's reemployment with the Merit System Protection Board, contending that her reemployment ahead of him violated his reemployment rights, in light of his higher seniority.
 
 
 8
 On July 20, 1989, Anderson informed TVA that he also wanted his individual complaint amended to include an allegation of discrimination in his non-selection for the position filled by Glenda Funchess.[3] He also again indicated that he wanted to include his non-selection for the Analyst M-2 position held by Talley as a basis for his complaint.
 
 
 9
 Final Agency Decisions on each of Anderson's complaints were duly rendered. On May 30, 1989, TVA served a Notice of Final Interview, relating to the class complaint, on Anderson by certified mail, return receipt requested. Anderson never picked up this item of mail, and the notice was eventually returned to TVA by the Chattanooga post office.
 
 
 10
 Also on May 30, 1989, Anderson's appeal to the MSPB, initiated April 10, 1989, was dismissed by an Administrative Law Judge. The ALJ's decision included notification that it would become a final decision on July 4, 1989, unless Anderson further appealed to the MSPB before that date. The decision also contained notification that Anderson could appeal to the U.S. Court of Appeals for the Federal Circuit within 30 days of the date on which the decision became final, i.e., July 4, 1989. Anderson did not seek further review in either forum.
 
 
 11
 On July 17, 1989, TVA sent a second Notice of Final Interview with regard to Anderson's pending class complaint, via first class mail to his Chattanooga address. The Magistrate Judge deemed that notice to have been received by Anderson, on July 20, 1989.
 
 
 12
 On August 1, 1989, Anderson filed a formal class discrimination complaint with the TVA EO, which was transmitted to the EEOC District Office in Memphis, on August 9, 1989.
 
 
 13
 On August 4, 1989, Notice of Final Interview on plaintiff's individual complaint was issued. The letter also contained notification that a formal administrative complaint must be filed within fifteen days of receipt of the notice letter. On August 17, 1989, Anderson filed a formal individual discrimination complaint with the TVA EO. He alleged age, sex, race, reprisal and handicap discrimination in connection with the 1988 reduction in force, the TVA's failure to recall him during the notice period in 1988, and his non-selection for the EO Analyst M-2 and M-4 positions in November and August of 1988.
 
 
 14
 An EEOC Administrative Law Judge recommended dismissal of Anderson's class complaint on March 7, 1990. TVA issued a final agency decision (No. 1138-C) on April 18, 1990, adopting the ALJ's recommendation and rejecting Anderson's class complaint. The final agency decision was sent to Anderson's Chattanooga address non-restricted certified mail, return receipt requested. This letter was never collected by Anderson, or anyone acting for him, and was ultimately returned to the TVA.
 
 
 15
 A final agency decision on Anderson's individual discrimination complaint was entered by TVA on May 1, 1990. (No. 1136). That decision was also mailed non-restricted certified mail, return receipt requested to Anderson's home address in Chattanooga, and was never claimed, although two notices were left at Anderson's home, on May 7 and 17, 1990. This letter was eventually returned to TVA unclaimed.
 
 
 16
 The final agency decision in the class and individual complaints were mailed via first class mail to Anderson's home address on May 11 and May 23, 1990, respectively. The notice on the class complaint was apparently received, as Anderson appealed that decision on May 29, 1990. On May 29, 1990, Anderson also wrote a letter acknowledging receipt of TVA's final decision on Complaint No. 1136, the individual complaint, in which he notified TVA of his intent to appeal the decision.[4]
 
 
 17
 Anderson's entire file was transmitted to the Director of Review and Appeals for the EEOC in Washington, D.C., on July 5, 1990. On August 29, 1990, the EEOC affirmed TVA's decision rejecting the class complaint. The EEOC decision incorporated a right to sue notice, informing Anderson of his right to file a civil action in federal court within thirty days of his receipt of the decision. Anderson did not file a civil suit based on the class complaint.
 
 
 18
 On October 11, 1990, TVA sent Anderson a letter bearing the following caption: "ATTEMPTED DELIVERY OF NOTICE OF PROPOSED DISPOSITION OF DISCRIMINATION COMPLAINT--EQUAL OPPORTUNITY FILE REFERENCE NO. 1136, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION NO. dos-bi-ioqs" The letter concerned a previously mailed certified letter, dated September 4, 1990, that was never claimed by Anderson.
 
 
 19
 Anderson filed this lawsuit on May 6, 1991, almost one year after the TVA rendered its decision on Anderson's individual claim, referenced as No. 1136. He insists that he was never notified that a final agency decision had been reached on his individual complaint.
 
 II.
 
 20
 Appellant has presented two issues to this Court: 1) whether the district court erred in granting TVA's motion for summary judgment on the ground that the doctrine of constructive notice is applicable and operates, in conjunction with the statute of limitations, to bar plaintiff's complaint; and, 2) whether filing a notice of intent to sue is a jurisdictional prerequisite to filing a civil action under the ADEA in district court. In addition, the appellee has raised the issue of whether plaintiff's instant appeal is barred by his alleged failure to appeal from the district court's determination that his administrative complaint was untimely.
 
 1.
 
 21
 Initially, this Court must consider the appellees' assertion that the instant appeal is barred by the appellant's alleged failure to appeal from the district court's determination that the plaintiff's administrative complaint was initiated too late. The magistrate judge concluded that Mr. Anderson's administrative complaint on his individual claims of discrimination was untimely filed, and that principles of equitable tolling were not applicable and could not operate to save Anderson's complaint.[5] However, Anderson did specifically object to that finding by the magistrate judge. In his objections plaintiff argues that:
 
 
 22
 [A] reasonable inference should be drawn that ... a waiver was granted by the defendant's consideration of all issues presented by the plaintiff. As such, the plaintiff objects to the Magistrate's proposed finding of fact as a dispositive conclusion of law that the plaintiff's filing of his individual discrimination complaint was untimely.
 
 
 23
 Pl. Objections, at p 9 on page 12. Accordingly, appellee's contention that Anderson failed to object to the conclusion of the magistrate judge regarding the timeliness of his administrative complaint is without merit, and provides no basis for dismissing the instant appeal.
 
 2.
 
 24
 Next, the issue of constructive receipt must be addressed. The magistrate judge found that TVA sent its Final Agency Decision denying Anderson's individual discrimination complaint to plaintiff Anderson by certified mail, that the letter was returned unclaimed, and that it was then mailed via regular first class mail to Anderson's address of record on May 23, 1990. The magistrate judge noted that Anderson denied receiving this letter, but concluded that the doctrine of constructive receipt applied. Consistent with that conclusion, the magistrate judge held that Anderson is presumed to have received the Final Agency Decision on his individual complaint on May 28, 1990. The magistrate judge relied on Hunter v. Stephenson Roofing, Inc., 790 F.2d 472, 475 (6th Cir.1986), and Cook v. Providence Hosp., 820 F.2d 176, 179 (6th Cir.1987). Over plaintiff's objection, this analysis and holding was adopted by the district court without comment.
 
 
 25
 Plaintiff-appellant argues that the doctrine of constructive receipt creates a rebuttable presumption that has been rebutted by Anderson's affidavit and deposition testimony, wherein he avers that he did not receive the notice of final agency decision. Plaintiff relies on In re Yoder, 758 F.2d 1114 (6th Cir.1985). Yoder reversed the decision of a bankruptcy court that applied the doctrine of constructive receipt to the issue of whether notice of the claims bar date in a bankruptcy action had been received. This Court concluded that the presumption of receipt that arose upon proof that the notice, properly addressed and having the appropriate postage affixed was deposited in the mail, was rebutted by the affidavits of the attorney and the creditor stating that it was never received. The Yoder panel expressly held that to conclude otherwise was inconsistent with prior decisions of this Court. Id. at 1118, citing McKentry v. Secretary of HHS, 655 F.2d 721 (6th Cir.1981); Baldwin v. Fidelity Phenix Fire Ins. Co., 260 F.2d 951, 953 (6th Cir.1958); 10 Moore's Federal Practice, § 301.04 (2d ed.).
 
 
 26
 Other precedents of this Court, however, consistently apply a different rule in the context of Title VII cases. "This court has not been inclined toward an inflexible rule requiring actual receipt of notice by a claimant before the ninety-day period [for bringing a civil action] begins to run." Banks v. Rockwell Intern'l. N. American Aircraft Operations, 855 F.2d 324, 326 (6th Cir.1988), citing Hunter v. Stephenson Roofing Co., 790 F.2d 472, 474 (6th Cir.1986). In Hunter, the plaintiff failed to notify the EEOC of his new address and did not receive notice of his right to sue until he learned from his former roommate that the mailman had attempted to deliver a certified letter to him. The Hunter Court held, on the facts of the case, that the thirty-day period began to run five days after the notice was mailed to his address of record by the EEOC. Hunter, 790 F.2d at 475.
 
 
 27
 Similarly, in Cook v. Providence Hosp., 820 F.2d 176, 179 (6th Cir.1987), this Court acknowledged the existence of a factual dispute regarding whether the plaintiff received a Right to Sue notice from the EEOC, but concluded, nonetheless, that summary judgment was appropriately granted in favor of the defendant on the ground that plaintiff had failed to timely pursue her rights. In Cook, notice of right to sue was mailed to plaintiff on May 25, 1983, and was not returned as undeliverable. On June 15, 1984, Cook was informed by a EEOC employee that a right to sue notice had been issued. Cook received a copy of the notice in July, 1985 and instituted suit on October 17, 1985. This Court held:
 
 
 28
 [W]hether or not Cook received the initial Notice of Right to Sue is not determinative. Assuming, arguendo, that Cook did not receive the Notice, she admits that she had actual knowledge, fully one year prior to suit, that the EEOC had given her the right to sue; yet, she unjustifiably failed to pursue her rights.
 
 
 29
 Cook, 820 F.2d at 179.
 
 
 30
 In the case at bar, notice was mailed to the plaintiff-appellant at his address of record on two separate occasions. The letter sent via certified mail was returned as unclaimed, after two notices were left at plaintiff's home. The letter mailed via first class was not returned as undeliverable. In addition, it is undisputed that Anderson received other correspondence from the TVA that was sent via first class mail. Finally, in light of his expertise in the field, Anderson cannot credibly argue that he was unaware of his right to institute suit if he did not receive a notice of final decision within 180 days.
 
 
 31
 On the facts of this case, summary judgment on this issue was appropriate. As in Cook, no genuine issue of material fact sufficient to defeat summary judgment is raised by Anderson's bald and unsupported denial of receipt of the notice of final decision on his individual discrimination complaint. Anderson was not diligent in the pursuit of his rights. Accordingly, the decision of the district court on this issue is AFFIRMED.
 
 3.
 
 32
 Finally, this Court must address plaintiff-appellant's contention that his failure to file notice of intent to sue did not raise a jurisdictional bar under the Age Discrimination in Employment Act (ADEA). The ADEA is expressly applicable to federal government employees, who are treated separately from private employees under the statute. 29 U.S.C. § 633a. The Supreme Court has concluded that Section 633a provides:
 
 
 33
 two alternative routes for pursuing a claim of age discrimination. An individual may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies. See 29 U.S.C. § 633a(b) and (c). A federal employee complaining of age discrimination, however, does not have to seek relief from his employing agency or the EEOC at all. He can decide to present the merits of his claim to a federal court in the first instance. See 29 U.S.C. § 633a(d).
 
 
 34
 Stevens v. Department of the Treasury, --- U.S. ----, 111 S.Ct. 1562, 1565 (1991). This Court has expressly held that a federal employee need not exhaust his administrative remedies prior to commencing suit in district court under the ADEA. Langford v. U.S. Army Corps of Engineers, 839 F.2d 1192, 1193-94 (6th Cir.1988).[6]
 
 
 35
 In this case, plaintiff invoked the administrative process by filing an official complaint with the TVA, which, under EEOC rules, satisfies the requirements of § 633a(b). It has been established that the plaintiff did not satisfy the timeliness requirements applicable to this administrative complaint. It is undisputed that plaintiff never filed a notice of intent to sue.
 
 
 36
 The magistrate judge concluded that because plaintiff had failed to provide notice of intent to sue he had not satisfied the prerequisites of § 633a(d). Plaintiff argues that because he initially elected to invoke the administrative process under § 633a(b) and (c), he is not required to satisfy the requirements of § 633a(d). On its face, subsection (d) applies to only those individuals who have not pursued an administrative remedy.[7] Plaintiff argues, therefore, that he is neither required to exhaust the administrative process, nor provide notice of intent to sue.
 
 
 37
 This Court has had no occasion to address this issue, and it appears that the issue has been discussed by only two district courts. In each case, the plaintiff "neither exhausted his administrative remedies nor gave the EEOC notice with respect to the ADEA violations alleged in his judicial complaint. [The] [p]laintiff also failed to give the EEOC prior notice of his intent to file a judicial complaint alleging those violations." Thorne v. Cavazos, 744 F.Supp. 348, 350-51 (D.D.C.1990), aff'd, No. 92-5137 (D.C.Cir. Jan. 29, 1993). The district court dismissed the complaint, holding that,
 
 
 38
 [although a federal employee may file suit for age discrimination] without having first exhausted his or her administrative remedies, if the federal employee does not do so, he or she must give the ... EEOC "not less than thirty days" notice of an intent to file such action. "Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred."
 
 
 39
 Id., quoting § 633a(d). See, Ivey v. Rice, 759 F.Supp. 394, 402, (S.D.Ohio 1991), affirmed 961 F.2d 1577 (6th Cir.1992) ("Where a plaintiff elects to bypass the administrative process in whole or in part, he must comply with the notice requirement of § 633a(d) or face dismissal." 759 F.Supp. at 402.)
 
 
 40
 These decisions are consistent with the Supreme Court's holding in Stevens, --- U.S. at ----, 111 S.Ct. at 1565. In that case, the plaintiff did not exhaust his administrative remedies, but did provide notice of intent to sue on the 176th day after the alleged discriminatory event occurred. Id.
 
 
 41
 Under the rationale of the Thorne and Ivey cases, the district court's dismissal of the instant ADEA claim would be upheld. Plaintiff acknowledges both that he did not exhaust his administrative remedies, and that he never provided notice of intent to sue, and certainly did not provide such notice within 180 days of the alleged discriminatory conduct, even assuming that the date from which that period ran was March 27, 1989, the date on which plaintiff allegedly discovered that a younger person had been hired to fill a position for which he was qualified.
 
 
 42
 The Thorne rule is sound. Absent some procedural bar, aggrieved federal employees would have the entire statutory limitation period, which may be as long as six years,[8] to initiate some action on their claims of discrimination. The Supreme Court has recognized this problem, and has held that it is reasonable to require aggrieved federal employees to diligently pursue their rights, for a variety of public policy reasons.
 
 
 43
 When a public official is unlawfully removed from office, whether from disregard of the law by his superior, or from mistake as to the facts of his case, obvious considerations of public policy make t of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified the government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.
 
 
 44
 Under circumstances which rendered his return to the service impossible, except under the order of a court, the [plaintiff] did nothing to effectively assert his claim for reinstatement to office for almost two years. Such a long delay must necessarily result in changes in the branch of the service to which he was attached and in such an accumulation of unearned salary that, when unexplained, the manifest inequity which would result from reinstating him renders the application of the doctrine of laches to his case peculiarly appropriate in the interest of justice and sound public policy.
 
 
 45
 Baskin v. Tennessee Valley Authority, 382 F.Supp. 641, 645 (M.D.Tenn.1974), aff'd & adopted, 519 F.2d 1402 (6th Cir.1975), quoting United States ex rel. Arant v. Lane, 249 U.S. 367, 372 (1919) (emphasis by District Court); Norris v. United States, 257 U.S. 77, 80 (1921).
 
 
 46
 This Court concludes that the rule adopted in Thorne and affirmed by the Court of Appeals for the District of Columbia is well-reasoned and effectuates sound public policy. Accordingly, the rule is adopted herein, and the decision of the district court dismissing plaintiff-appellant Anderson's ADEA claim is AFFIRMED.
 
 
 
 *
 The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The defendants-appellees will be referred to collectively hereinafter as TVA
 
 
 [2]
 Anderson, his acceptance of a job outside TVA notwithstanding, applied for a position within TVA, in the Inspector General's Office. He took an examination for that position on his last day at TVA. Apparently, no job offer was forthcoming
 
 
 [3]
 Glenda Funchess, a black female, 33 years old, was offered an EO Analyst M-4 position in August 1988, during the RIF notice period. The offer was made on the basis of a prior recommendation of Funchess' supervisor. Funchess was selected to fill a newly-created EO Analyst M-4 slot on August 15, 1988
 
 
 [4]
 It is not entirely clear from this notice whether Anderson refers to the class complaint or the individual complaint
 
 
 [5]
 Specifically, the magistrate judge made the following proposed conclusion of law, that was adopted by the district court:
 TVA's RIF and subsequent failure to reemploy [Anderson] on each of the aforementioned dates [August 15, 1988 and November 21, 1988] are the alleged discriminatory events or personal (sic) actions complained of in the present action. James Anderson, however, did not make initial contact with a TVA EO Counselor in connection with these events until at least March 27, 1990. Under 29 C.F.R. § 1613.214(a)(1), therefore, the filing of Anderson's administrative individual discrimination complaint was untimely.
 R & R, Proposed Conclusions of Law, p 7 at p. 25.
 
 
 [6]
 Although the Supreme Court, in Stevens, noted a split in the circuits on this issue, it declined to resolve it because the government had abandoned its adversary position on the issue, conceding that exhaustion is not required. Consequently, Langford remains good law
 
 
 [7]
 Subsection (d) provides, in pertinent part, "When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until ..."
 
 
 [8]
 Some courts have held that the six-year catch-all statute of limitations for non-tort civil claims, found in 28 U.S.C. § 2401(a) applies. Lubniewski v. Lehman, 891 F.2d 216 (9th Cir.1989); Bornholdt v. Brady, 869 F.2d 57 (2d Cir.1989); Lavery v. Marsh, 918 F.2d 1022 (1st Cir.1990)