NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0359n.06
Filed: June 23, 2008

No. 07-5853

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SAMMY R. McKNIGHT, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| ROBERT MICHAEL GATES, | ) | |
| Secretary, Department of Defense, | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | |

_____

## OPINION

**Before: KEITH and SUTTON, Circuit Judges; ACKERMAN, District Judge.**[*]

**HAROLD A. ACKERMAN, District Judge.** Plaintiff Sammy R. McKnight appeals the

dismissal of his claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§ 633a, and the denial of his motion for class certification. We agree with the District Court that

McKnight failed to exhaust his administrative remedies or otherwise comply with the

prerequisites to file his class-based claims. With regard to his individual claims of age

discrimination, McKnight failed to state a claim under the ADEA. For these reasons, we will

affirm.

_____

[*] The Honorable Harold A. Ackerman, Senior United States District Judge for the District
of New Jersey, sitting by designation.

1

# I.

McKnight is a retired civil service employee of the United States Department of the Army. He retired from a position in South Korea in 2001 as a federal annuitant. In October 2003, McKnight applied for a new position with the United States Department of Defense in South Korea as a General Supply Specialist. On January 26, 2004, he was offered the position, and he accepted the offer the next day. On February 9, 2004, he received a telephone call from a Human Resource Specialist in the Civilian Personnel Advisory Center in South Korea, informing him that his hiring decision had been suspended due to a Department of Defense ("DOD") memorandum that imposed a fifty-day hiring freeze with regard to all federal annuitants. This memorandum, issued February 3, 2004 by the DOD Civilian Personnel Management Services, stated in relevant part: "The Department of Defense (DOD) is developing policy and procedures for the employment of annuitants . . . . Because of pay considerations inherent to annuitant appointments, all such hiring actions should be suspended until the DOD policy is implemented." (First Am. Compl. ¶ 15, JA at 25.) The memorandum was issued in furtherance of 5 U.S.C. § 9902, which created new policies related to encouraging the hiring of annuitants by the DOD.

McKnight received an email containing the memorandum and an official letter withdrawing the job offer on February 20, 2004. A current Civil Service employee was subsequently hired for the General Supply Specialist position McKnight sought. However, McKnight does not identify the age of the hired employee in his Amended Complaint in this matter. The DOD annuitant hiring freeze was lifted after 50 days, on March 18, 2004, upon the promulgation of new DOD policy and procedures encouraging the hiring of annuitants.

McKnight first contacted the Equal Opportunity Employment Commission ("EEOC") on

2

March 10, 2004, by way of an informal complaint. It stated, in type-written text, that McKnight wished "[t]o file a complaint based on age wherein it is alleged that the suspension of annuitant appointments targets and discriminates against a select group of people by their age." (JA at 158). The word "class" appears in the type-written text before the word "complaint", but "class" was crossed out. (*Id.*) At the end of this type-written sentence, the words "spefically including myself" are hand-written.[1] (*Id.*) Soon thereafter, McKnight wrote a memorandum to his EEOC counselor concerning the informal complaint. The counselor's report states that McKnight's memorandum alleged that ". . . the DOD memorandum was highly unfair, unjust and discriminatory against all annuitants, especially himself." (JA at 134.) McKnight filed a formal EEOC complaint on April 16, 2004. This formal complaint did not contain any express class allegations. The EEOC mailed him a right-to-sue letter on February 15, 2006.

McKnight filed this purported class action against the Secretary of Defense in the Northern District of Georgia in May 2006. He alleged violations of Title VII and the ADEA. He filed a First Amended Complaint with the same claims in July 2006, and filed a motion for class certification in August 2006. In September 2006, the parties stipulated to the dismissal of the Title VII claim. The Government moved to dismiss for lack of venue, and the district court transferred the case to the Middle District of Tennessee. The Government thereafter filed a motion to dismiss. The District Court granted the Government's motion, and denied the motion for class certification.

---

[1]The copies of these and other documents in the record are of poor quality and difficult to decipher. However, McKnight does not dispute their substance as stated by the District Court, and does not dispute that the word "class" is crossed out, although he asserts that he does not remember crossing it out himself. (McKnight Br. at 8 & n.1.)

The District Court had federal question jurisdiction over McKnight's ADEA claims pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over McKnight's timely appeal pursuant to 28 U.S.C. § 1291.

**II.**

We review the District Court's grant of the Government's motion to dismiss de novo. *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). A claim survives a motion to dismiss if "[f]actual allegations [are] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007) (citations omitted). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 1969 n.8. However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level'; they must 'state a claim to relief that is plausible on its face.'" *Bishop v. Lucent Techs., Inc.*, __ F.3d __, 2008 WL 822265, at *2 (6th Cir. Mar. 25, 2008) (quoting *Twombly*, 127 S. Ct. at 1965, 1974). Of course, this Court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in the plaintiff's favor. *Jones*, 521 F.3d at 559. "[W]e need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *see also Twombly*, 127 S. Ct. at 1964-65 (holding that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions"). "[L]egal conclusions masquerading as factual allegations will not suffice."

*Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

### III.

The District Court held that McKnight failed to exhaust administrative remedies for his class action claims.[2] We agree.

For Federal Government employees, the ADEA does not explicitly require a plaintiff to exhaust administrative remedies before bringing suit. Rather, a plaintiff has two alternative routes pursuant to 29 U.S.C. § 633a. Under subsections (b) and (c), "[a]n individual may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991). Or "[h]e can decide to present the merits of his claim to a federal court in the first instance," pursuant to 29 U.S.C. § 633a(d). *Id.* at 6. This Court has held that these two potential routes are not mutually exclusive: filing an administrative claim with the EEOC does not foreclose the option of proceeding directly in federal court. *Langford v. U.S. Army Corps of Eng'rs*, 839 F.2d 1192, 1195 (6th Cir. 1988) (holding that "the ADEA places no limitations on the filing of a civil action when an employee has filed an age discrimination complaint with the EEOC and . . . the regulations contemplate the filing of civil actions without exhaustion of administrative remedies").

---

[2]The Government filed its motion to dismiss the class allegations as a motion for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). However, a failure to exhaust administrative remedies – the asserted basis for the Government's motion – is not a jurisdictional bar, but rather a condition precedent to an action in federal court. *See, e.g.*, *Zipes v. Trans World Airlines*, 455 U.S. 385, 393-98 (1982); *Mitchell v. Chapman*, 343 F.3d 811, 819-20 (6th Cir. 2003). Thus, the District Court assessed the Government's exhaustion argument pursuant to Rule 12(b)(6) standards, and we do the same.

The question here is whether McKnight exhausted the administrative prerequisites to bringing a *class action* suit; he undoubtedly exhausted the process with regard to his individual ADEA claim. *See, e.g.*, *Monreal v. Potter*, 367 F.3d 1224, 1233 (10th Cir. 2004) ("[W]e have held that *class* claims cannot be exhausted through an *individual* complaint."). We agree with the District Court that McKnight did not exhaust his administrative remedies with regard to his class action counts. EEOC regulations dictate the requirements for exhaustion of class allegations. The written EEOC complaint must contain allegations regarding numerosity, commonality, typicality, and adequate representation. 29 C.F.R. § 1614.204(a)(2). A claimant seeking to file a class complaint "must seek counseling and be counseled" with regard to such a claim. 29 C.F.R. § 1614.204(b). After such counseling, a claimant "may move for class certification at any reasonable point in the process when it becomes apparent that there are class implications to the claim raised in an individual complaint." *Id.* A class administrative complaint "must identify the policy or practice adversely affecting the class as well as the specific action or matter affecting the class agent." 29 C.F.R. § 1614.204(c)(1). Furthermore, such a "complaint must be filed with the agency that allegedly discriminated not later than 15 days after the agent's receipt of the notice of right to file a class complaint." 29 C.F.R. § 1614.204(c)(2).

McKnight did not comply with these procedures. In his first informal complaint, the word "class" is crossed out. In his formal EEOC complaint, he charges the Department of Defense with "target[ing] and discriminating against a select group of people by their age, spe[cifically] including myself." (JA at 164). However, this is insufficient to assert a class claim, as the complaint did not include the specific information required by 29 C.F.R. §

6

1614.204. The EEOC counselor made no reference to any class claim in his report based on his counseling of McKnight. As the District Court commented, "EEOC counselors are not oracles," (JA at 195), and McKnight's informal and formal filings with the EEOC did not alert the EEOC of any desire to bring a class claim in accordance with EEOC regulations. He cannot now be heard to contend that the EEOC failed to properly counsel him regarding the requirements for a class complaint when he did not express any intent to file such an action in his dealings with the EEOC.

McKnight seeks refuge in the "scope of the charge" rule, which allows a plaintiff to add to his claims based on information discovered during an EEOC investigation. *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir. 1980). Yet this doctrine does not aid McKnight here because rather than add to the substance of his claims, he attempts to evade EEOC requirements by transforming an individual action into a class action. As the District Court concluded, "the EEOC has promulgated specific guidelines for the filing and presentation of class complaints that, under [McKnight's] reading of the 'scope of the charge' rule, would be rendered meaningless." (JA at 196.)

As noted, a plaintiff in this Circuit may seek administrative remedies and then bring an ADEA claim against the Federal Government without first exhausting those remedies. *Langford*, 839 F.2d at 1195. Several circuits now follow *Langford*. *See Bankston v. White*, 345 F.3d 768, 772-77 (9th Cir. 2003), *Adler v. Espy*, 35 F.3d 263, 264-65 (7th Cir. 1994). We recognize that some circuits follow a different approach and have held that once a plaintiff invokes the EEOC's administrative process, he or she cannot bring a direct claim in federal court until exhaustion of that administrative process. *See Ivey v. Rice*, 759 F. Supp. 394, 399 (S.D. Ohio 1991) (collecting

cases from First, Second, Third, and Fifth Circuits). In *Ivey*, a district court in our Circuit distinguished *Langford* and held that "[w]here a plaintiff elects to bypass the administrative process in whole *or in part*, he must comply with the notice requirement of § 633a(d) or face dismissal." *Id.* at 402 (emphasis added). Notice, the court elaborated, therefore "would be required in regard to any claims which are not the subject of the EEOC complaint, and in regard to claims for which administrative remedies were not exhausted." *Id.* A panel of this Court affirmed that decision, concluding that the district court's reasoning was "correct." *Ivey v. Rice*, No. 91-3487, 961 F.2d 1577 (Table), 1992 WL 102498, at *3 (6th Cir. Apr. 29, 1992) (per curiam). A subsequent panel of this Court applied the same reasoning in *Anderson v. Tennessee Valley Authority*, in which the panel expressly approved of the reasoning of another district court which held that "'[although a federal employee may file suit for age discrimination] without having first exhausted his or her administrative remedies, if the federal employee does not do so, he or she must give the . . . EEOC 'not less than thirty days' notice of an intent to file such action.'" No. 92-5811, 991 F.2d 794 (Table), 1993 WL 113730, at *6 (6th Cir. Apr. 13, 1993) (per curiam) (quoting *Thorne v. Cavazos*, 744 F. Supp. 348, 350-51 (D.D.C. 1990)).

Thus, as the District Court correctly noted, any action in which the plaintiff fails to exhaust his or her administrative remedies is subject to the notice requirements of 29 U.S.C. § 633a(d). *See, e.g.*, *Burzynski v. Cohen*, 264 F.3d 611, 617 (6th Cir. 2001). A plaintiff must file a notice of intent to file within 180 days of the alleged discrimination, and must file the action in federal court no less than 30 days after giving such notice. 29 U.S.C. § 633a(d). Here, plaintiff never informed the EEOC of his intent to file a class complaint. McKnight did not satisfy the requirements to bring a class claim under any approach, and the District Court did not err in

8

dismissing his class claims and denying his motion for class certification.

## IV.

The District Court considered McKnight's individual ADEA claims under theories of disparate treatment and disparate impact. To state a claim under a disparate treatment theory, a plaintiff must allege that "age was a determining factor in the adverse action that the employer took against him or her." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993). McKnight asserts that age discrimination was a motivating factor in the DOD hiring freeze that led to the withdrawal of his job offer, because annuitant status depends on age and nearly all annuitants are over 40 years of age. As the District Court held, however, the Supreme Court's decision in *Hazen Paper Company v. Biggins* forecloses McKnight's claim. 507 U.S. 604 (1993). In *Hazen Paper*, the Supreme Court held that "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Id.* at 611. Thus, pursuant to *Hazen Paper*, "the ADEA prohibits only actions actually motivated by age and does not constrain an employer who acts on the basis of other factors – pension status, seniority, wage rate – that are empirically correlated with age." *Allen v. Diebold, Inc.*, 33 F.3d 674, 676 (6th Cir. 1994) (citing *Hazen Paper*, 507 U.S. at 611). Annuitant status here, like the pension status at issue in *Hazen Paper*, is analytically distinct from age. As the District Court noted, federal employees may reach annuitant status in several ways, none of which directly corresponds to age and two of which are entirely independent of age. (JA at 205 n.4.) The DOD memorandum upon which McKnight bases his claim does not refer to age, but only to the

9

Department's ability to compensate newly-hired annuitants.

We have held that "an employer may not use any of these factors as a proxy for age, but age itself must be the motivating factor behind the employment action in order to constitute an ADEA violation." *Allen*, 33 F.3d at 676. Indeed, the Supreme Court in *Hazen Paper* carved out a limited exception to its holding. The Court stated that "[w]e do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination." *Hazen Paper*, 507 U.S. at 612-13. However, the Court cautioned that "inferring age-motivation from the implausibility of the employer's explanation may be problematic in cases where other unsavory motives, such as pension interference, were present." *Id.* at 613. McKnight does not allege pretext; rather, he asserts repeatedly in his First Amended Complaint and his brief that the DOD memorandum was expressly discriminatory on its face. McKnight's only allegation that could possibly be read to suggest pretext states that "[a]s virtually all annuitants are over the age of forty (40), the issuance of the Memorandum freezing the hiring of annuitants evidenced discrimination towards a class of people solely due to their advanced age." (First Am. Compl. ¶ 24, JA at 27.) This allegation cannot be read to assert pretext, especially because, as a matter of law, the Supreme Court and this Court have held that decisions based on pension and annuitant status alone are not discriminatory.

*Hazen Paper* also dooms McKnight's efforts to establish age discrimination through circumstantial evidence, rather than direct evidence. In the absence of direct discrimination, a plaintiff may establish a prima facie violation of the ADEA by alleging "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse

10

employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008). McKnight's First Amended Complaint contains no allegation regarding the age of the person who ultimately took the General Supply Specialist position. Thus, he has not made out a prima facie case. Even if he had, he still has failed to state a claim. If an ADEA plaintiff makes out a claim of prima facie discrimination, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* If the defendant provides such a reason, the burden shifts back to plaintiff to show that the reason was pretextual. *Id.* Here, as discussed above, DOD's asserted basis for the hiring freeze – concerns regarding the compensation for annuitants – has been held by the Supreme Court in *Hazen Paper* to be nondiscriminatory under the ADEA as a matter of law. Furthermore, McKnight does not allege pretext; in fact, he asserts that the DOD hiring freeze was directly motivated by the intent to limit the number of newly-hired annuitants.[3]

Finally, any disparate impact claim that may be found in McKnight's First Amended Complaint fails because a prima facie case under a disparate impact theory requires a plaintiff to allege a disproportionate impact on a specific protected group. *Gantt v. Wilson Sporting Goods*, 143 F.3d 1042, 1048 (6th Cir. 1998). McKnight alleges in his First Amended Complaint that the DOD memorandum "caused a disparate impact to a protected group of people, annuitants."

---

[3]In his brief, McKnight asserts that the DOD memorandum "speaks for itself, in that it suspended the hiring of the older workforce. Thus, Appellant would be able to support his burden of showing pretext in this case." (McKnight Br. at 24.) However, the text of the memorandum as alleged does not suspend the hiring of "the older workforce." It suspends the hiring of annuitants, and *Hazen Paper* held that pension status is analytically distinct from age. Furthermore, by asserting that the memorandum "speaks for itself," McKnight undermines any possible allegation of pretext.

11

(First Am. Compl. ¶ 20, JA at 26.) The Supreme Court's decision in *Hazen Paper* compels the conclusion that annuitants, like pensioners, are not a protected group under the ADEA. McKnight argues that the District Court's ruling runs afoul of *Smith v. City of Jackson*, in which a plurality of the Supreme Court stated "we were careful to explain that [in *Hazen Paper*] we were not deciding 'whether a disparate impact theory of liability is available under the ADEA[.]'" 544 U.S. 228, 238 (2005) (plurality) (quoting *Hazen Paper*, 507 U.S. at 610). However, the District Court clearly did not conclude that the ADEA disallows a disparate impact claim. Rather, the District Court correctly concluded that McKnight has not sufficiently alleged such a claim here.

The District Court did not err in dismissing McKnight's ADEA claims under all asserted theories.

## V.

For the foregoing reasons, we AFFIRM the District Court's grant of Defendant's motion to dismiss and denial of McKnight's motion for class certification.