**Raymond G. LACKHOUSE, Plaintiff,**

v.

**Nicholas F. BRADY, Defendant.**

**No. 89 C 7315.**

United States District Court,
N.D. Illinois, E.D.

July 18, 1990.

LaDonna M. Loitz, Deutsch, Levy & Engel, Chtd., Chicago, Ill., for plaintiff.

Gillum Ferguson, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Fifty-six-year-old Raymond G. Lackhouse ("Lackhouse") has sued Treasury Secretary Nicholas F. Brady ("Brady"), charging that the Internal Revenue Service ("IRS") violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA")[1] by repeatedly failing to hire Lackhouse as a revenue officer despite his being qualified for the position. Lackhouse's Amended Complaint (the "Complaint") seeks an injunction directing Brady to appoint him to the position of revenue officer, backpay, liquidated damages and attorney's fees and costs. Brady has filed a Fed.R.Civ.P. ("Rule") 12(b)(1) motion to dismiss this action for lack of subject matter jurisdiction and for Lackhouse's failure to exhaust administrative remedies. For the reasons set out in this memorandum opinion and order, Brady's motion is granted on the second of those grounds.

### Facts [2]

In October 1987, May 1988 and October 1988 IRS was hiring individuals to fill the position of revenue officer (a GS–7 position) in the Los Angeles, California area. At each of those times Lackhouse was unsuccessful in applying for the revenue officer position despite the fact that he was fully qualified. Instead, on each occasion younger applicants with no superior qualifications were appointed to the positions.

Immediately after IRS told Lackhouse on October 31, 1988 that he was not among the applicants then being appointed as a revenue officer, he sought counseling from an IRS Equal Employment Opportunity counselor ("EEO counselor"). That counseling bore no fruit, and on December 19, 1988 the EEO counselor issued Lackhouse a notice of final interview.

Two weeks later (on January 3, 1989) Lackhouse filed a formal complaint with IRS. On February 3, 1989 IRS accepted that complaint for investigation on the following issue only (D.Mem.Ex. 5):

> [W]hether [Lackhouse was] not selected on or about October 25, 1988 ... for appointment to a revenue officer ... position in the Los Angeles District because of [his] age [54] and in reprisal for [his] previous filing of a MSPB appeal which contained an allegation of discrimination.

Another letter of the same date told Lackhouse that his allegations regarding his status as a veteran and his claims under the Civil Service Reform Act were being rejected as outside the scope of the EEO regulations and advised him that he had the right either (1) to file a civil action as to those rejected claims within 30 days or (2) to appeal to the Equal Employment Opportunity Commission ("EEOC") within 20 days.[3]

---

**1.** All future references to ADEA provisions will simply take the form "Section—," using the Title 29 section numbers rather than ADEA's internal numbering. Citations to ADEA's regulations, published in 29 C.F.R., will be cited "Reg. § —."

**2.** On the current Rule 12(b)(1) motion, all of the Complaint's well-pleaded factual allegations are accepted as true, with all reasonable inferences drawn in Lackhouse's favor (see this Court's opinion in *Local 705 I.B.T. v. Willett, Inc.,* 614 F.Supp. 932, 933 n. 1 (N.D.Ill.1985)). While a district court considering a Rule 12(b)(1) motion may properly look beyond the jurisdiction-

al allegations of the complaint to determine whether jurisdiction in fact exists, the purely legal nature of the issues raised on this motion makes such an added inquiry unnecessary.

**3.** In fact that IRS letter contained some incorrect information about Lackhouse's appeal rights as to the rejected claims. It stated (D.Mem.Ex. 6):

> If you are dissatisfied with this decision, you are entitled to file a civil action in the appropriate United States District Court, *OR,* you may first file an appeal with the Equal Employment Opportunity Commission (EEOC).

But Lackhouse followed neither of those paths. On September 26, 1989, before IRS had completed its investigation of the accepted claim, Lackhouse filed this lawsuit without having submitted direct notice to EEOC of his intent to sue. IRS now seeks to dismiss this lawsuit for lack of jurisdiction and Lackhouse's failure to exhaust administrative remedies or, if both those dismissal efforts fail, seeks to limit the scope of the case to the October 31, 1988 non-selection of Lackhouse.

## Jurisdiction

In its effort to demonstrate the claimed jurisdictional defect in Lackhouse's Complaint, IRS invokes the square holding in *Kontos v. United States Department of Labor*, 826 F.2d 573, 576 (7th Cir.1987) that ADEA's time limits and filing requirements are jurisdictional in suits against the government and that the burden of establishing such jurisdiction is on the plaintiff. But *Rennie v. Garrett*, 896 F.2d 1057, 1061–62 (7th Cir.1990) and *McGinty v. United States Department of the Army*, 900 F.2d 1114, 1118 (7th Cir.1990) cast serious doubt on the continuing validity of *Kontos*. This opinion will first identify the nature and source of that doubt—then will explain why the doubt need not be settled here.

*Rennie* explicitly overruled *Sims v. Heckler*, 725 F.2d 1143 (7th Cir.1984), upon which *Kontos* had rested, and held that administrative requirements in *Title VII* suits against the federal government should be treated just as they are in suits against private employers—as statutes of limitations subject to equitable principles such as waiver, estoppel or tolling and *not* as jurisdictional prerequisites. *Rennie* quite properly did not in terms extend its holding to the similar administrative requirements in the virtually parallel ADEA (a question not then before the court). But *Rennie*'s emphasis on subordinating sovereign immunity concerns to the goals of Title VII—goals of ending government-fostered discrimination that are shared by ADEA—at least suggest the extension of its holding to the treatment of ADEA's administrative requirements as well.[4]

Nonetheless, on the very heels of *Rennie* our Court of Appeals has negated any automatic application of that decision to ADEA's administrative requirements. *McGinty*, 900 F.2d at 1118 specifically reserved that question, noting that its resolution would not affect the outcome of that case, and in so doing cited back to *Kontos* in finding that the plaintiff in *McGinty* would lose if the administrative time re-

If an appeal to the EEOC is filed, you retain the right to file a civil action in the appropriate United States District Court within thirty (30) days of receipt of EEOC's final decision or after 180 days have passed from the filing of the appeal if no decision has been received. That information lacks any foundation in the statute or regulations. Reg. §§ 1613.281 to 1613.282 do require the agency to give that type of notice where complainants allege discrimination based on race, sex, religion or national origin, but Reg. § 1613.514 specifically excludes application of those provisions to ADEA cases (see *Trammell v. Callaway*, 415 F.Supp. 212, 216 n. 1 (N.D.Miss.1976)). As the later text discussion reflects, nowhere do the ADEA regulations allow a complainant who has chosen the EEOC appeal route to bring suit before a final *EEOC* determination on the merits, even if more than 180 days should pass without such an administrative decision. It is of course an integral part of Title VII procedures that a complainant who claims something other than age-based discrimination and who has filed a charge with EEOC may go to court if EEOC has not acted on that charge within the 180-day period. That puzzling difference does not have to be explored under the facts of this case—nor does the question whether an age discrimination complainant could be stymied by protracted inaction at the EEOC level (something that, as just indicated, the regulations prevent in non–ADEA cases). Those murky waters are roiled even further by the decision in *Langford v. United States Army Corps of Engineers*, 839 F.2d 1192, 1194 (6th Cir.1988)—the case that is referred to in n. 6 as having rejected the administrative exhaustion requirement and that our Court of Appeals' *McGinty* majority spurned but that dissenting Judge Cudahy would have followed—and by the ensuing change in Reg. § 1613.513 (which now says that an agency complainant's filing of a lawsuit involving that complaint *does* terminate its processing).

**4.** That suggestion would seem buttressed by *Kontos'* total reliance on the now-overruled *Sims* holding.

quirements were indeed jurisdictional.[5]

Under the circumstances this Court will take a leaf from the *McGinty* book: Because the Complaint here fails to state any equitable defense for Lackhouse's failure to comply with ADEA's administrative requirements, the ultimate resolution of this case is unaffected by whether those requirements are treated as jurisdictional or as statutes of limitations. It is therefore unnecessary to resolve the question left open in *McGinty*.

### Satisfaction of Administrative Requirements

■ *McGinty*, 900 F.2d at 1116–17 spells out the options available to an individual in Lackhouse's position:

> Certainly, a federal employee claiming discrimination under the ADEA has two alternatives when commencing her claim. A suit may be filed in federal district court after giving the EEOC 30 days' notice of intent to sue. 29 U.S.C. § 633a(d). In the alternative, an agency complaint may be filed and, after final disposition on the merits by the EEOC, a claimant may file suit in federal district court. 29 U.S.C. § 633a(c).

First off, it is apparent that the latter course is not available to Lackhouse. *McGinty, id.* at 1117 (joining four other circuits) specifically found that once an individual initiates administrative remedies, he or she must exhaust such remedies before a suit may be filed.[6] In other words, by filing his IRS complaint Lackhouse made a commitment to the administrative process that he could not abandon until he had a final disposition from EEOC—and clearly his turning to this District Court before IRS had even completed its in-house investigation demonstrates a total non-compliance with that exhaustion requirement.

■ Though that ruling alone would appear to resolve this case entirely—calling, of course, for dismissal of the Complaint and this action—the parties have raised a related issue that calls for discussion here. Lackhouse contends that he is properly before this Court because filing his complaint with *IRS* sufficed to provide notice to *EEOC* of his intent to sue as required by Section 633a(d). In support of that proposition Lackhouse points to the statement in *Purtill v. Harris*, 658 F.2d 134, 138 (3d Cir.1981) that according to Reg. §§ 1613.-511 and 1613.214 complaints filed with agencies are deemed filed with EEOC. Therefore, the argument goes, EEOC did have notice of Lackhouse's intent to sue in January 1989, more than 30 days in advance of his filing of his original Complaint here—and hence Lackhouse satisfied the Section 633a(d) notice requirement.

However strained that argument appears in light of the nature of Lackhouse's deemed "notice of intent to sue" (it was really an administrative complaint seeking a substantive review at that level),[7] some cases other than *Purtill* also support the proposition that filing such a complaint with the agency is tantamount to giving notice to EEOC. *McIntosh v. Weinberger*, 810 F.2d 1411, 1425 (8th Cir.1987) says:

> The Act provides that after filing a complaint with the EEOC, the employee may institute a civil action in District Court.

And *McIntosh, id.* n. 6 then cites only to *Purtill* (a weak reed, if any at all) to qualify the first clause of that statement by

---

5. *McGinty*'s alternative holding was that the plaintiff would also lose if the time requirements were treated as statutes of limitations (*id.*). In dissent Judge Cudahy urged the adoption of the latter approach under "the logic of *Rennie* ..." (*id.* at 1119).

6. Judge Cudahy's dissent, *id.* at 1119 would have joined forces with the one other circuit (the Sixth) that had gone the other way (see the final sentence of n. 3).

7. As indicated in the last paragraph, *Purtill*, 658 F.2d at 138 did nothing more than state its conclusion and cite two sections of the regulations. But Reg. § 1613.511 merely mandates agency promulgation of "regulations governing the acceptance and processing of complaints of discrimination on account of age" that, with stated exceptions, track the "principles and requirements" of the regulations treating with other claims of discrimination—and none of those has any deemed-filed-with-EEOC provision. And Reg. § 1613.214, though specifically captioned "Filing and processing of complaint," contains not a word suggesting a deemed-filed concept. *Purtill*'s statement is thus a total mystery.

saying, "The filing of a formal complaint with the employee's agency, as was done here, satisfies this requirement." Somewhat to the same effect, *Davis v. Devine*, 554 F.Supp. 1165, 1170 (W.D.Mich.1983), while holding that informal letters to the employing agency did not satisfy the Section 633a(d) notice requirement, did so only because the letters were not explicit enough to charge EEOC with knowledge of the intent to sue—*not* because they were addressed to the agency rather than to EEOC itself. And less clearly *Kontos*, 826 F.2d at 575–76 n. 4 (citations omitted, emphasis added) remarks:

> [I]n the context of ADEA cases, it is important to add that the weight of authority indicates that federal employees have the option to exhaust their administrative remedies by bypassing the procedures and simply *notifying the employer* of their intent to sue.[8]

*Purtill* and its progeny are totally unpersuasive in their ipse dixit pronouncements. Any notion that filing a complaint with the allegedly discriminatory agency—the first step down the alternative administrative path—simultaneously provides Section 633a(d) notice to EEOC (thus opening the door to suit in a district court) raises fundamental questions of both logic and the regulatory language. And those questions compel just the opposite answer.

In logical terms, what possible sense could there be to requiring administrative exhaustion if one of the preliminary steps that an individual must take in the administrative process automatically serves to open up another channel of almost immediate access to the courts? Indeed, the rec-ognition of that problem led *Purtill* to reach what must be considered an anomalous result if its statement as to the EEOC notice provision is taken seriously. Despite the fact that *Purtill* did find the agency complaint was deemed filed with EEOC for Section 633a(d) notice purposes more than 30 days before the civil action was brought, the court there upheld dismissal of the lawsuit complaint on the ground that the administrative remedies had not been exhausted. But if (1) seeking an administrative remedy with an ultimate right to judicial appeal and (2) suing directly after providing EEOC notice are truly *alternative* courses of action, the requirements attendant to pursuing one course should not be applied to the other. In other words, once the requisite notice (that is, a literal notice of intent to sue as the statute prescribes) is provided to EEOC, a prospective plaintiff should have to do nothing more than wait out the 30 days to file suit—any "exhaustion" of administrative remedies should be irrelevant, where the statute itself requires only the ticking of the clock. If the quite different type of filing that is made with the employing agency (a filing that complains of the adverse employment action and says "please review my case and come to a different conclusion") is allowed to do double duty as a deemed notice of the employer's intent to sue willy-nilly after just 30 days have elapsed, the line dividing the alternative courses of action is really blurred beyond reason.

Certainly it is unadvisable to allow a complainant to circumvent the exhaustion requirement by simply proceeding to court at any time after more than 30 days have passed since filing the agency complaint.[9]

---

**8.** In fairness, that statement by our Court of Appeals may merely reflect a less than precise use of the term "employer" rather than "EEOC." *Kontos'* "weight of authority" citations are to decisions that expressly refer to the employee's need to file the notice of intent to sue with EEOC.

**9.** En route to confirming the administrative exhaustion requirement, *Purtill*, 658 F.2d at 138 (citations omitted) laments the possibility of precisely such an outcome as hypothesized in the text here:

> Allowing a plaintiff to abandon the administrative remedies he has initiated would tend to frustrate the ability of the agency to deal with complaints. All participants would know that at any moment an impatient complainant could take his claim to court and abort the administrative proceedings. Moreover, such a course would unnecessarily burden courts with cases that otherwise might be terminated successfully by mediation or conciliation. Absent an indication of contrary congressional intent, we will not countenance circumventing the administrative process in this manner.

In view of that expression it is even more mystifying why the *Purtill* Court, without any analy-

But if a court were to find that filing such a complaint truly satisfies the Section 633a(d) notice requirement, that consequence *must* logically follow. That obvious inconsistency strongly suggests taking a hard look at the regulations that are said to require the notion of a deemed (though not actual) EEOC filing. This Court has taken such a look, and it finds that filing an agency complaint does *not* satisfy Section 633a(d)'s notice-of-intent-to-sue requirement.

*Hinton v. Solomon,* 475 F.Supp. 105, 108 (D.D.C.1979) skillfully articulates the statutory argument at odds with Lackhouse's position:

> [P]laintiff's assertion that filing a complaint with the administrative agency serves the same purpose as providing timely notice of intent to file suit is not well-taken. It is clear from the language of the statute that the purpose of providing notice to the Commission is to permit that body to contact the prospective defendants and take action to eliminate the unlawful practices. 29 U.S.C. § 633a(d) (1976). Such action by the Commission is consistent with its mandate to enforce the right of federal employees in age discrimination cases. *See id.* § 633a(b) (1976). Although the filing of an administrative complaint would provide notice to prospective defendants, it would neither make the Commission aware of the alleged discrimination problem nor give the Commission the opportunity to exercise its directive to resolve the matter short of a judicial proceeding.

Even a brief examination of the relevant regulations bears out *Hinton's* explication of the problem, revealing that none of the provisions regarding agency processing of complaints in any way suggests that notification of (much less transmission of the agency complaint to) EEOC is part of the process.

As n. 7 reflects, Reg. § 1613.511 simply requires federal agencies to adopt internal regulations in the area of age discrimination similar to those that Reg. §§ 1613.213 to .222 require in the race, sex and religion area. Nothing in any of those sections, particularly Reg. § 1613.214 upon which *Purtill* relied, either states or implies that filing with an agency shall be "deemed" filing with EEOC. It is true that Reg. § 1613.214(a)(2) calls for the agency official who receives a complaint to "transmit it to the Director of Equal Opportunity or appropriate Equal Employment Opportunity Officer"—but despite their partial sharing of a similar title, there is no doubt that those officials too are agency officials and *not* EEOC officials. Indeed, the first reference to such a person in Reg. § 1613.214 (a reference also found at Reg. § 1613.214(a)(2)) expressly states that the appropriate official to receive the complaint is the *agency's* Director of Equal Opportunity—a clear indication that the regulations speak of the designated agency officials called for in Reg. § 1613.204(c) to implement the *agency's* EEO program.

Reg. § 1613.216's investigative procedure regulations provide a further indication that EEOC—a wholly separate body—is neither notified of nor involved in the agency processing of complaints. Reg. § 1613.216(a) provides in part:

> The Equal Employment Opportunity Officer shall advise the Director of Equal Employment Opportunity of the acceptance of a complaint. The Director of Equal Opportunity shall provide for the prompt investigation of the complaint.

It is perfectly clear that the quoted language speaks only of *intra*-agency activity.

That reading is reconfirmed by the very existence of Reg. § 1613.216(c), which provides (emphasis added):

> The Commission [EEOC] *may* assume responsibility for the investigation of any portion or all of an agency's complaints upon the execution of a memorandum of understanding to this effect with the agency. The agency shall reimburse the Commission for all expenses incurred in connection with the investigation.

Obviously then, except when it undertakes to do so pursuant to such an agreement, EEOC is not even involved in processing or

---

sis, would have suggested that an agency complaint sufficed as notice to EEOC.

investigation of agency complaints. In fact the reimbursement provision strongly suggests that dealing with agency-filed complaints is completely and exclusively the responsibility of the agency itself, with EEOC becoming involved only on a subcontractor type basis. And that suggestion becomes a certainty when it is seen that the only result of the EEOC *investigation* (a look at the facts of the case) is a *recommendation* to the employing agency, which is expressly vested by Reg. § 1613.216(c) with the decisional authority.

That last statement must be qualified by pointing out that EEOC later does become *directly* involved as a decisionmaker if a complainant should later choose to appeal an ultimate agency decision under Reg. § 1613.231. At that stage—reached only after the employee has traveled the entire intra-agency path to an unacceptable end—EEOC obviously is not working on a subcontractor basis, but is rather fulfilling its own obligation under the regulatory framework. And it should be noted that only *after* resolution of such an appeal to EEOC are the administrative remedies exhausted so as to justify a suit in district court (see *McGinty*, 900 F.2d at 1117, requiring "final disposition on the merits by the EEOC," and *Hinton*, 475 F.Supp. at 108).

That completes a tour through all the potentially relevant provisions of the regulations. *None* of them supports the deemed-filed-with-EEOC notion stated in conclusory form by *Purtill* and parroted elsewhere—all without any discussion or analysis of the source materials themselves.

Although it has thus proved ultimately unpersuasive, Lackhouse's position is the product of a perhaps understandable misapprehension of the law. *Ray v. Nimmo*, 704 F.2d 1480, 1484 n. 10 (11th Cir.1983 (emphasis in original)) explains:

> The regulatory complaint process is far from clear. This confusion stems primarily from the distinction between claims brought by privately employed individuals and those brought by federal employees. Obviously, a private employee must seek out the EEOC; it is fairly obvious, then, when an EEOC complaint has been filed. Under the regulations governing *federal* employees, however, the employing agency shares many of the EEOC's responsibilities. To one not familiar with the regulatory scheme, the institution of the EEOC formal complaint process deceptively resembles an internal agency grievance process, particularly since agency officials play a significant role in that process.

It is precisely that agency involvement that appears to have wrought the confusion underlying this case. Filing an agency complaint and then ultimately appealing a final adverse agency action to EEOC puts a complainant in the same position vis-a-vis access to a federal court as does the alternate route of filing a complaint directly with EEOC and awaiting final action directly from the source.

Because following either of those two paths leads to the same destination[10]—complete exhaustion of administrative remedies sufficient to allow a lawsuit—a mistaken belief has developed that dealing with an agency in pursuit of administrative remedies is somehow the same thing as notifying EEOC directly. From there it is but a short (though impermissible) jump to the faulty conclusion that an identity also exists between the agency and EEOC for the purpose of providing Section 633a(d) notice of intent to sue.

But as already explained, that conclusion is nowhere supported by the regulatory provisions themselves, finecomb them as one will. Thus the regulatory result converges with the earlier-stated logical analysis: Notice to the agency alone of an employee's dissatisfaction (in any form, whether via a formal complaint or a simple correspondence) cannot be deemed to satis-

**10.** *Hinton*, 475 F.Supp. at 108 (citations omitted) explains:
[Complainant] may preserve his right to file a civil suit, even if he fails to file his complaint directly with the Commission or to comply in timely fashion with the notice requirements of section 633a(d) if he files an administrative complaint and takes a timely appeal from an adverse final agency decision to the Commission's Appeal Review Board.

fy the required notice to EEOC of the employee's intent to sue.

### Conclusion

Lackhouse failed to exhaust his administrative remedies, and he has offered no reason why equity should excuse that failure. Accordingly his Complaint and this action are dismissed by reason of that nonexhaustion.