Helen K. MIRZA, Plaintiff,

v.

The DEPARTMENT OF TREASURY, an Executive Department of the United States Government, through Lloyd Bentsen, In His Capacity As Secretary of the Department of Treasury; The Office of Thrift Supervision, an Agency of the Department of Treasury, through Jonathan L. Fiechter, In His Capacity as Acting Director; and the Federal Home Loan Bank of Chicago, through Alex J. Pollock, In His Capacity as President of The Federal Home Loan Bank of Chicago, a quasi-governmental agency, Defendants.

No. 93 C 3122.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 9, 1995.

**516**

Susan Bogart, Chicago, IL, for plaintiff.

Ann L. Wallace, Chicago, IL, Elizabeth R. Moore, Richard L. Rennert, Washington, DC, Alan M. Kaplan and Adrianne C. Mazura, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

#### Facts

In January, 1975, the Federal Home Loan Bank of Chicago ("Bank") hired Helen Mirza ("Ms. Mirza") as a Supervisory Analyst. Ms. Mirza was promoted to Supervisory Agent and Assistant Vice President in June, 1984, and to Vice President in September, 1988. Ms. Mirza remained employed at the Bank until 1989, when Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), which abolished the Federal Home Loan Bank Board and transferred its regulatory functions to the Office of Thrift Supervision ("OTS") within the Department of the Treasury ("Treasury"). FIRREA mandated that all home loan bank employees performing functions delegated by the Board would be transferred to OTS by October 8, 1989. Ms. Mirza became an OTS employee at that time.

In November, 1989, Ms. Mirza was demoted to the position of Group Leader at OTS. On November 29, 1989, Ms. Mirza protested to her superiors that her new position assignment was part of a pattern of unlawful sex discrimination of which she had long been aware, that she had informally attempted to resolve such discrimination over the years, and that she intended to file a formal complaint with the Equal Employment Opportunity Commission ("EEOC") and to explore the possibility of bringing a civil suit. However, Ms. Mirza never filed with the EEOC a formal complaint or a notice of intent to sue in connection with this demotion or any other unlawful employment practices at the Bank. In December, 1990, Ms. Mirza took the position of Industry Rehabilitation Manager. On June 17, 1992, Ms. Mirza was formally notified that, effective August 23, 1992, this position would be eliminated through a reduction in force ("RIF"). Ms. Mirza was offered, and accepted, the position of Examiner V at the same annual salary, but at a lower grade.

On September 11, 1992, Ms. Mirza appealed the RIF to the Merit Systems Protection Board. In her appeal petition, Ms. Mirza claimed that the RIF constituted discrimination, was part of a pattern of discrimination based on age and sex, reflected retaliation against her for having reported banking law violations, and was procedurally deficient. On March 19, 1993, Administrative Judge

Julia Grip rejected these allegations and affirmed OTS' decision to eliminate the position for a permissible reason, *i.e.*, lack of work.

On May 24, 1993, Ms. Mirza brought this action against the Department of the Treasury (through Secretary Lloyd Bentsen), OTS (through Acting Director Jonathan L. Fiechter), and the Bank (through President Alex J. Pollock), alleging violations of Title VII of the Civil Rights Act ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Equal Pay Act ("EPA"). Generally, Ms. Mirza alleges that, at least since 1986, defendants have engaged in a pattern of unlawful and discriminatory employment practices that have deprived her of equal employment opportunities, advancement, and wages because of her age and sex.

On February 2, 1994, Judge Zagel, to whom this case was then assigned, dismissed the Title VII and ADEA claims against OTS, and all discrimination claims against the Bank arising from conduct alleged to have occurred after October 8, 1989. The Bank now moves for summary judgment on all remaining claims against it. Treasury moves to dismiss the pre-FIRREA Title VII and ADEA claims, and for summary judgment on the post-FIRREA Title VII and ADEA claims, except as to the August 23, 1992 reduction in force. As to the reduction in force, Treasury moves to dismiss the retaliation claim in Count III. Treasury and OTS also move to dismiss the EPA claim to the extent that Ms. Mirza seeks relief for alleged pay discrimination occurring before May 24, 1990. For the reasons stated herein, defendants' motions are granted in part and denied in part.

### *Analysis*

#### I. *Pre–FIRREA Title VII and ADEA Claims*

The Bank moves for summary judgment on Ms. Mirza's pre-FIRREA Title VII and ADEA claims on the ground that Ms. Mirza failed to exhaust her administrative remedies. For the same reason, Treasury separately moves to dismiss these claims for lack of subject matter jurisdiction pursuant to FED.R.CIV.P. 12(b)(1). In response, Ms. Mir-

za argues that the conduct of the defendants equitably tolled the relevant statutes of limitation.

 As an employee of the Bank, Ms. Mirza was required to comply with the administrative exhaustion requirements applicable to private employees. 12 U.S.C. § 1422b(a)(2); *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214 (4th Cir.1993); *Osei–Bonsu v. Federal Home Loan Bank of New York*, 726 F.Supp. 95 (S.D.N.Y.1989). A Title VII complainant must file a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurs. 42 U.S.C. § 2000e–5(e)(1). If the EEOC dismisses the charge or fails to act within 180 days after the charge is filed, the Title VII complainant may bring a civil action against her employer in federal district court. 42 U.S.C. § 2000e–5(f)(1). An ADEA complainant in Illinois must file a charge of discrimination with the EEOC within 300 days after the alleged unlawful employment practice occurs. 29 U.S.C. § 626(d)(2); *Hamilton v. Komatsu Dresser Industries, Inc.*, 964 F.2d 600, 603 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 324, 121 L.Ed.2d 244 (1992) (citing *Stark v. Dynascan Corp.*, 902 F.2d 549, 551 (7th Cir.1990)). The ADEA complainant may not bring a civil action in federal court until 60 days after the charge has been filed with the EEOC. 29 U.S.C. § 626(d). These administrative filing requirements are not jurisdictional prerequisites which pose an absolute bar to suit, but rather "conditions precedent," similar to statutes of limitations, which are subject to equitable modification. *Perkins v. Silverstein*, 939 F.2d 463, 469–70 (7th Cir.1991) (citations omitted).

Ms. Mirza admits that she has never filed charges with the EEOC in connection with any of the Bank's alleged unlawful employment practices. Instead, Ms. Mirza argues that the statute of limitations must be equitably tolled in this case because all unlawful acts of which she complains, beginning in March, 1986 and continuing through the present, constitute a "continuing violation." Under the continuing violation doctrine, the statute of limitations begins to run on the

date of the last occurrence of discrimination. Therefore, she concludes, "the only question before this Court is whether Plaintiff filed her claim in connection with the last act of discrimination charged in her complaint," *i.e.*, the reduction in force of August 23, 1992, which was timely appealed to the Merit Systems Protection Board.

Ms. Mirza's argument, however, misconstrues the law. As the Seventh Circuit recently explained:

Under the doctrine of equitable tolling, ... a person injured by an unlawful act need not sue until he knows, or through the exercise of reasonable diligence would have known, ... that he has been injured by a possibly wrongful act of the defendant.... If it is only with the benefit of hindsight, after a series of discriminatory acts, that the plaintiff can realize that he is indeed a victim of unlawful discrimination, he can sue in regard to all of the acts provided he sues promptly after learning their character, even if the statute of limitations has run on all of them. If, however, he knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed him, he may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one.

*Moskowitz v. Trustees of Purdue University,* 5 F.3d 279, 281–82 (7th Cir.1993).

■ In the case at bar, it is clear that Ms. Mirza was aware of the alleged pre-FIRREA discriminatory conduct insofar as it involved sex discrimination at least as early as November 29, 1989. On that date, Ms. Mirza sent her superiors a memorandum, in which she stated:

I conclude, as a result of a great many factors coming to bear over the 15 years of my employment here at FHLB/OTS, that I am the object of sexual discrimination, disparate treatment, and subtle, but painful, harassment.... [T]here are a significant number of other incidents and events that have occurred in the near and distant past which I could and am prepared to, cite that support my conclusion.... In the event that these matters, which I have broached

directly and indirectly on numerous face-to-face occasions over the years and recent months with my direct superior ... are not addressed, I feel I will then have no alternative but to attempt to address these matters through channels outside the organization.... Specifically, I intend to file an EEOC complaint as well as to explore the possibility of a civil suit ...

Declaration of Randy Thomas, Ex. B, pp. 1–2; Bank 12(M) Statement, ¶ 15; Treasury 12(M) Statement, ¶ 6. Evidently, Ms. Mirza believed that she had been the object of discrimination at the Bank and understood the charge-filing procedure mandated by federal law, but nevertheless declined to comply with the administrative filing requirements of Title VII. Accordingly, she may not rely on a "continuing violation" theory to revive her pre-FIRREA Title VII claims against the Bank.

■ The record before the Court does not contain Ms. Mirza's admission that she knew she was the victim of age discrimination before the time she appealed her RIF to the Merit Systems Protection Board in September, 1992. However, neither does the record provide any basis for concluding that Ms. Mirza did not know at an earlier date of the age discrimination she now claims. Ms. Mirza bears the burden of proof on this issue since she is claiming the "benefit of an exception from the operation of a statute of limitations." *De Witt v. United States,* 593 F.2d 276, 281 (7th Cir.1979). *See also Teumer v. General Motors Corp.,* 840 F.Supp. 538, 546–57 (N.D.Ill.1993). Accordingly, although she is the non-movant on this summary judgment motion, she was required "to make a showing sufficient to establish the existence of an essential element" to avoid summary judgment. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). The Bank was not required to negate her claim. *Id.* Accordingly, the Bank is entitled to summary judgment as to Ms. Mirza's pre-FIRREA ADEA claims as well.

■ Ms. Mirza alternatively argues that the Bank is not entitled to summary judgment because there is a factual issue as to whether the Bank posted notices informing

its employees of their rights under Title VII and the ADEA. Employers are required to post informational notices in conspicuous places informing employees of their rights under Title VII and the ADEA. 42 U.S.C. § 2000e–10; 29 U.S.C. § 627. If an employer fails to do so, the charge-filing period will not begin to run until the employee either retains an attorney or acquires actual knowledge of her rights. *Schroeder v. Copley Newspaper*, 879 F.2d 266, 271 (7th Cir.1989) (citations omitted). However, as illustrated above, Ms. Mirza had actual knowledge of her right to file a formal complaint with the EEOC regarding her claims of sex discrimination as early as November 28, 1989, but nevertheless failed to do so. (It should also be noted that Ms. Mirza is a licensed attorney. Bank 12(M) Statement, ¶ 13.) In its Local General Rule 12(M) Statement, the Bank asserts that during the time of the alleged discrimination, it had conspicuously posted the EEOC's Equal Employment Opportunity poster, as well as a letter setting forth the Bank's own Equal Employment Opportunity Policy. Bank 12(M) Statement, ¶¶ 9–11. Because Ms. Mirza failed to submit her own statement and response pursuant to Local General Rule 12(N), these facts remain uncontradicted and are deemed to be admitted. Local General Rule 12(N); *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir. 1992).

Having offered no justification for her failure to file charges with the Bank or the EEOC, the Court finds that Ms. Mirza failed to exhaust administrative remedies with respect to her pre-FIRREA Title VII and ADEA claims against the Bank. Consequently, these claims are now time-barred. Accordingly, the Bank is entitled to summary judgment on the pre-FIRREA Title VII and ADEA claims.

■ However, Treasury is not entitled to dismissal of these claims pursuant to FED. R.CIV.P. 12(b)(1). The Title VII and ADEA administrative filing requirements are construed as statutes of limitations rather than as jurisdictional prerequisites. *Rennie v. Garrett*, 896 F.2d 1057, 1062 (7th Cir.1990); *Hamilton v. Komatsu Dresser Industries, Inc., supra*, 964 F.2d at 605–06; *Lackhouse v. Brady*, 746 F.Supp. 751, 753 (N.D.Ill.1990). Consequently, the Court may not look beyond the face of the complaint to resolve factual disputes in deciding this motion. *Rennie v. Garrett, supra*, 896 F.2d at 1062; *Medina v. Cheney*, No. 91 C 2958, 1991 WL 264639, at *1 (N.D.Ill. Dec. 9, 1991).

■ The question of whether the relevant administrative time limits should be tolled in this case is a factual dispute which cannot be resolved on a motion to dismiss. Although Treasury has submitted evidence, such as the November 29, 1989 memorandum, in support of its position, the Court must look only to the allegations of the complaint, which do not by themselves foreclose the possibility that Ms. Mirza is entitled to equitable tolling in this case.[1] Accordingly, Treasury's motion to dismiss the pre-FIRREA Title VII and ADEA claims must be denied.

---

1. Treasury did file a Local General Rule 12(M) statement and a motion for summary judgment on the post-FIRREA claims that encompasses the material that is relevant to the pre-FIRREA Title VII claims. But Treasury chose to move for dismissal under Rule 12(b)(1), rather than seek summary judgment on the pre-FIRREA claims. The rules do not permit the Court to assume that Ms. Mirza would agree to having the Rule 12(b)(1) motion treated as a motion for summary judgment. Ms. Mirza did refer in her complaint to the fact that she complained about the November, 1989 transfer on the ground that it "constituted unlawful discrimination" (Complaint, ¶ 21) but since this statement does not refer to the kind of discrimination believed to exist, it would be improper to assume on a motion to dismiss that the statement referred to unlawful sex and age discrimination.

If Ms. Mirza had filed a Local General Rule 12(N) statement actually admitting the existence of the November 29, 1989 memorandum referred to earlier, the Court would nevertheless conclude that allowing her pre-FIRREA claims to stand against Treasury when they have been dismissed against the Bank on the Bank's motion for summary judgment made no sense. *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1304 (7th Cir.1988) (approving practice of dismissing claims as to non-moving defendant when non-moving defendant is similarly situated to moving defendant or claims against all defendants are integrally related). But she did not admit it; she only failed to respond. While that failure is binding on her insofar as a properly supported motion under FED.R.CIV P. 56, the Court will not attribute that admission to a different party in this context.

## II. *Post–FIRREA Title VII and ADEA Claims*

Treasury next moves for summary judgment on the post-FIRREA Title VII and ADEA claims, except as to the August 23, 1992 reduction in force. In support of its motion, Treasury argues that Ms. Mirza, as an OTS employee, failed to satisfy the Title VII and ADEA administrative requirements applicable to federal employees. In response, Ms. Mirza argues that she properly exhausted her remedies by bringing these claims before the Merit Systems Protection Board as a "mixed" case.

■■■■ As an employee of OTS, Ms. Mirza was required to comply with the administrative exhaustion requirements applicable to federal employees. *See, e.g., Robbins v. Bentsen,* 41 F.3d 1195 (7th Cir.1994); *Financial Institutions Retirement Fund v. Office of Thrift Supervision,* 964 F.2d 142, 145 (2d Cir.1992). Title VII specifically requires a federal employee to exhaust her administrative remedies as a precondition to filing suit in federal court. *McGuinness v. United States Postal Service,* 744 F.2d 1318, 1319–20 (7th Cir.1984) (citations omitted). The regulations under Title VII require federal employees to bring complaints to the attention of the EEO counselor in the agency within 30 calendar days of the date of the alleged discriminatory event. 29 C.F.R. § 1613.214(a)(1)(i); *Wolfolk v. Rivera,* 729 F.2d 1114, 1116–17 (7th Cir.1984).[2] If the EEO counselor is unable to resolve the matter informally, the EEO counselor will issue the employee a notice of the right to file a formal complaint with the agency; the employee has 15 days after receipt of the notice to file the formal complaint. 29 C.F.R. § 1613.214(a)(1)(ii). The employee may bring an action in federal district court within 90 days of receiving notice of final action taken by the agency, or within 180 days of the date on which the formal complaint was filed if the agency failed to take action on the formal complaint. 42 U.S.C. § 2000e–16(c). A federal employee claiming discrimination under the ADEA has two alternatives when

commencing her claim. She may file a lawsuit in federal district court after first giving the EEOC 30 days' notice of intent to sue, or she may file an administrative complaint and, after final disposition by the EEOC or her employing agency, or after 180 days if the complaint is not acted upon, she may bring a lawsuit in federal district court. *Adler v. Espy,* 35 F.3d 263, 264–65 (7th Cir.1994) (citations omitted).

■■■ For a narrowly-defined class of personnel actions, a federal employee may petition the Merit Systems Protection Board ("MSPB") for review rather than file an administrative complaint with the employing agency or the EEOC. The MSPB has only that jurisdiction conferred on it by Congress. *Cruz v. Department of Navy,* 934 F.2d 1240, 1243 (Fed.Cir.1991) (citing *Thomas v. United States,* 709 F.2d 48, 49 (Fed.Cir.1983)). By law, the MSPB has jurisdiction to hear and adjudicate "adverse actions," which include only removal, suspension for more than fourteen days, reduction in grade, reduction in pay, and furlough of 30 days or less. 5 U.S.C. §§ 7512(1–5), 7513; *see also Williams v. Department of the Army,* 651 F.2d 243, 244 (4th Cir.1981).

■■■ The MSPB also has jurisdiction to adjudicate "mixed" cases, which involve an adverse action, as defined above, in which the complainant alleges that a basis for the adverse action was discrimination prohibited by Title VII, the ADEA, or other enumerated federal statutes. 5 U.S.C. § 7702(a)(1); *Synan v. Merit Systems Protection Board,* 765 F.2d 1099, 1101 (Fed.Cir.1985). However, since the "adverse actions" enumerated in 5 U.S.C. § 7512 are exhaustive, the MSPB lacks jurisdiction over claims of discrimination concerning promotions, performance evaluations, or any other personnel actions which are not themselves appealable to the MSPB. *See, e.g., Van Werry v. Merit Systems Protection Board,* 995 F.2d 1048, 1050 (Fed.Cir.1993); *Latimer v. Department of Air Force,* 657 F.2d 235, 237 (8th Cir.1981);

---

**2.** This time period may be extended for reasons including lack of knowledge of facts supporting a claim of discrimination. *Id.* at 1117. This would appear to encompass a theory of "continuing violation."

*Williams v. Department of the Army,* 715 F.2d 1485, 1487 (Fed.Cir.1983).

In the case at bar, Ms. Mirza brought a timely appeal of the August 23, 1992 RIF before the MSPB. On March 19, 1993, Administrative Judge Grip affirmed the agency's action, finding that the agency invoked the RIF regulations for a permissible reason, *i.e.* lack of work, and that the action was not a pretext for prohibited discrimination. Complaint, Ex. A. However, Administrative Judge Grip also found that the MSPB lacked jurisdiction over the other non-RIF discriminatory acts of which Ms. Mirza complained, presumably because they did not constitute "adverse actions" as defined by 5 U.S.C. §§ 7512(1–5). Declaration of Randy W. Thomas, Ex. III. Therefore, the record before the Court reveals that Ms. Mirza has exhausted her administrative remedies only as to the timely-filed RIF appeal to the MSPB. With respect to her other claims of discrimination, Ms. Mirza has not produced any evidence in opposition to Treasury's summary judgment motion demonstrating that she has satisfied the applicable Title VII and ADEA administrative requirements.[3]

Ms. Mirza's actual awareness of an alleged pattern of discriminatory practices as early as November, 1989 precludes tolling the statute of limitations with respect to these claims. *See Moskowitz v. Trustees of Purdue University, supra,* 5 F.3d at 281–82; *Jones v. Merchants National Bank & Trust*

*Company of Indianapolis,* 42 F.3d 1054, 1057 (7th Cir.1994). Since they are now time-barred, Treasury is entitled to summary judgment on the non-RIF, post-FIRREA Title VII and ADEA claims for which Ms. Mirza has failed to satisfy the applicable administrative requirements.[4]

Treasury also moves to dismiss Count III with respect to the RIF. Treasury argues that dismissal of this claim is warranted because Ms. Mirza failed to raise during her MSPB appeal a claim that the RIF constituted retaliation for her previous opposition to unlawful employment practices. When considering a "mixed" case, a federal district court reviews the discrimination claim de novo, and the nondiscrimination claim on the administrative record. 5 U.S.C. § 7703(c); *Romain v. Shear,* 799 F.2d 1416, 1421 (9th Cir.1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987); *Murray v. United States Department of Justice,* 821 F.Supp. 94, 101 (E.D.N.Y.), *aff'd.,* 14 F.3d 591 (2nd Cir.1993). However, the sparse record before this Court neither supports nor refutes Treasury's contention. Accordingly, Treasury's motion to dismiss Count III with respect to the RIF is denied.

### III. *Equal Pay Act Claim*

Treasury, OTS, and the Bank next move this Court to dismiss the EPA claim on the ground that it is time-barred by the applicable period of limitation.[5] Under

---

3. Ms. Mirza claims that the defendants concealed from her the means by which she could pursue a separate EEO claim in addition to the MSPB appeal. However, in its Local General Rule 12(M) Statement, Treasury states that the OTS EEO specialist in Washington informed Ms. Mirza of the proper procedure for submitting a formal EEO complaint. In addition, Ms. Mirza attended two meetings at which EEO counselors were identified, procedures for bringing discrimination complaints were discussed, and a training handbook describing federal employees' rights under Title VII and the ADEA was distributed. Treasury 12(M) Statement, pp. 3–4, ¶¶ 10, 11. Since Ms. Mirza failed to submit her own statement pursuant to Local General Rule 12(N), these facts remain uncontested and are deemed to be admitted. *Schulz v. Serfilco, Ltd., supra,* 965 F.2d at 519.

4. While defendants' motions were pending, Ms. Mirza moved to amend her complaint to add two

new counts. These claims stem from (1) OTS' failure to promote Ms. Mirza to the position of Regional Deputy Director in January, 1993, and (2) Ms. Mirza's annual performance rating issued in March, 1993. With respect to these incidents, it appears that Ms. Mirza timely filed a formal complaint with OTS, received a final decision, obtained a right to file suit in federal court within 90 days, and moved to amend the complaint within the 90–day period. Accordingly, Ms. Mirza has exhausted her administrative remedies with respect to these claims.

5. Treasury and OTS move to dismiss the EPA claim to the extent that Ms. Mirza seeks relief for alleged unlawful conduct occurring before May 24, 1990. The Bank seeks summary judgment on the EPA claim since the Court previously dismissed all claims of discrimination against the Bank alleging unlawful conduct occurring after October 8, 1989.

the Equal Pay Act, a claim for sex-based wage discrimination must be brought within two years of the alleged violation, or within three years if willfulness is alleged. 29 U.S.C. § 255(a); *Feng v. Sandrik*, 636 F.Supp. 77, 81 (N.D.Ill.1986). Since Ms. Mirza has alleged willfulness on the part of defendants, the applicable period of limitation in this case is three years. Ms. Mirza is not entitled to rely on a continuing violation theory to revive her claims of discriminatory pay occurring before the three-year limitation period. *Jones v. Merchants National Bank & Trust Company of Indianapolis, supra,* 42 F.3d at 1058 (citing *Webb v. Indiana National Bank,* 931 F.2d 434, 438 (7th Cir.1991)).

Therefore, Ms. Mirza is entitled to recover for alleged violations of the Equal Pay Act occurring within three years of the May 24, 1993 filing date of this lawsuit, *i.e.,* pay discrimination occurring on or after May 24, 1990. *See Sweeney v. Edward Don & Co.,* No. 86 C 5745, 1987 WL 10287, at *2 (N.D.Ill. Apr. 24, 1987). Accordingly, the EPA claim is dismissed as to Treasury and OTS to the extent that Ms. Mirza seeks relief for alleged unlawful conduct occurring before May 24, 1990. The Bank is entitled to summary judgment on the EPA claim since Ms. Mirza received her last paycheck as a Bank employee on September 30, 1989, and ceased to be an employee of the Bank as of October 8, 1989.[6]

### Conclusion

For the foregoing reasons, the Bank is entitled to summary judgment on all remaining claims against it. Accordingly, the Bank is dismissed from this lawsuit. Treasury is entitled to judgment on those post-FIRREA Title VII and ADEA claims for which Ms. Mirza failed to timely comply with the applicable administrative requirements. Treasury's motions to dismiss the pre-FIRREA Title VII and ADEA claims, and those claims relating to the August 23, 1992 reduction in force, are denied. The motion by Treasury

and OTS to dismiss the Equal Pay Act claim against them is granted to the extent that Ms. Mirza seeks relief for alleged unlawful conduct occurring before May 24, 1990.

---

**6.** Ms. Mirza argues that there is a factual issue with respect to the precise date on which she ceased to be paid by the Bank. However, these dates, which are reported in the Bank's Local General 12(M) statement and supported by affi-

davit, control for purposes of this motion because Ms. Mirza failed to submit a Local General Rule 12(N) statement contesting them. *See* Bank 12(M) Statement, ¶ 14; *Schulz v. Serfilco, Ltd., supra,* 965 F.2d at 519.